UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
LORI GARDNER-ALFRED et al.,                                       :
                                                                  :
                           Plaintiffs,                            :
                                                                  :        22-cv-1585 (LJL)
        -v-                                                       :
                                                                  :        ORDER
FEDERAL RESERVE BANK OF NEW YORK,                                 :
                                                                  :
                           Defendants.                            :
                                                                  :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/11/2022

LEWIS J. LIMAN, United States District Judge:

Defendant Federal Reserve Bank of New York ("FRBNY") moves for an order dissolving the temporary restraining order entered against it in state court and dismissing the complaint. Dkt. No. 7.

Plaintiffs Lori Gardner-Alfred ("Gardner-Alfred") and Jeanette Diaz ("Diaz," and collectively with Gardner-Alfred, "Plaintiffs") are employed by FRBNY. Gardner-Alfred is Executive Assistant to the Executive Vice President of the FRBNY. Dkt. No. 1-1 at 6. Diaz is a Senior Executive Specialist. *Id.* at 32. On February 23, 2022, Plaintiffs commenced actions in New York State Supreme Court complaining that the FRBNY's Covid-19 vaccination policy was "clearly discriminatory, arbitrary, and capricious [and] not supported by scientific knowledge and fact but fear and intimidation [and not] based on Petitioner's ability to perform our job functions." Dkt. No. 1-1 at 11, 37. Plaintiffs sought "an immediate injunction barring [the FRBY] from firing [them] until it c[ould] show cause that [their] non-vaccination will cause it undue hardship and prevent [them] from satisfactorily performing [their] job duties and functions." *Id.* at 13, 39. Among the facts alleged by Plaintiffs was that the FRBNY initially

accepted their requests for a religious exemption but later required them either to become vaccinated or face the termination of their employment. *Id.* at 9–10, 35–36. Plaintiffs filed their Request for Judicial Intervention seeking a temporary restraining order ("TRO") on February 23, 2022, Dkt No. 1-1 at 2; that same day, Justice Frank of the New York State Supreme Court granted Plaintiffs an *ex parte* restraining order directing the FRBNY to show cause on March 7, 2022, why Plaintiffs should not be granted a permanent injunction restraining the FRBNY from firing Plaintiffs due solely to the fact that their non-vaccination status would cause Defendant an undue hardship and prevent Plaintiffs from performing their essential work duties and enjoining and restraining the FRBNY from terminating their employment pending the hearing on the motion. *Id.* at 4-5.

The action was removed to this Court on February 25, 2022. Dkt. No. 1. On March 2, 2022, the FRBNY filed the instant motion to dissolve the TRO. Dkt. No. 7. The Court held a scheduling conference on March 4, 2022, at which it scheduled the hearing on the motion for March 7, 2022 and gave Plaintiffs until March 6, 2022 to submit papers in response. Plaintiffs did so on March 6, 2022 by email.

Section 1450 of Title 28 provides in pertinent part: "Whenever any action is removed from a State court to a district court of the United States . . . (a)ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. 1450. However, "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. 423, 437 (1974). Thus, Rule 65—not the New York CPLR—governs the FRBNY's motion to

dissolve the TRO. *See id.* at 438 (holding that terms and protections of the Federal Rules of Civil Procedure, including Rule 65, apply after case is removed). Under Rule 65(b)(4), a party who is restrained by an order issued without notice may move on two days' notice to the other side for an order dissolving or modifying the order. Fed. R. Civ. P. 65(b)(4). The rule provides that "[t]he court must then hear and decide the motion as promptly as justice requires." *Id.* The burden is on the party seeking the restraint to show that it is justified. *SG Cowen Sec. Corp.*, 2000 WL 633434, at *1. Rule 65(b)(1) also provides that "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: . . . specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and . . . the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b)(1). Finally, Rule 65(b)(2) provides that "[e]very temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered into the record." Fed. R. Civ. P. 65(b)(2).

The FRBNY argues that the TRO should be dissolved because Plaintiffs' submissions to New York State Supreme Court do not meet the requirements necessary to satisfy the granting of *ex parte* relief under federal law. Dkt. No. 8 at 7–8.

First, as outlined above, Rule 65(b) provides that TRO may be entered without notice "*only* if . . . specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." The FRBNY argues that Plaintiffs' submissions in state court fail to meet

this burden. Both Gardner-Alfred and Diaz submitted petitions that outline their job titles and job functions, Dkt. No. 1-1 at 6, 32, as well as affidavits in support of those petitions that provide a chronology of the Plaintiffs' experiences with the FRBNY's Covid-19 policies, *id.* at 9–10, 35–36, and argue that the FRBNY "has failed to justify its CoViD-19 [sic] vaccination Policy" because it has failed to identify:

> A. The specific facts and factors used and/or relied upon by The Bank to determine or conclude any "Undue Hardship".
> B. Whether or not any said "vaccine" prevents the spread of the SARS COV-2 virus.
> C. Whether or not the policy of masking and social distancing within the office is sufficient to protect all workers within the building.
> D. Whether or not periodic testing for SARS COV-2 infection is sufficient to ensure workers, whether vaccinated or not, are not exposed to the SARS CoV-2 virus.
> E. Whether or not The Bank was prepared to indemnify me from any damages caused by taking said "vaccine".
> F. Whether or not there exists proof of A-symptomatic transmission of said virus from one person to another (and, if yes, under what circumstances).
> G. Whether or not a non-vaccinated person is a potential health threat to a vaccinated person.
> . . .
> State a reasonable cause as to why [Plaintiffs] cannot continue to work at home, other than [Plaintiffs'] supposed inability to escort guests visiting the Bank.

*Id.* at 11, 37. They conclude that, "[b]ased on the foregoing, the Banks policy is clearly discriminatory, arbitrary, and capricious. It is not supported by scientific knowledge and fact but fear and intimidation. Nor is it based on Petitioner's ability to perform our job functions." *Id.* They request that the state court "issue an immediate injunction barring [the FRBNY] from filing [Plaintiffs] until it can show cause that [Plaintiffs'] non-vaccination will cause it an undue hardship and prevent [Plaintiffs] from satisfactorily performing our job duties and functions." *Id.* at 13, 39. The facts contained in these affidavits nowhere "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as Rule 65(b)(1) requires. The only immediate injury asserted in these affidavits

is that the FRBNY "noticed [Plaintiffs] that we would be terminated on [February] 25, 2022." Dkt. No. 1-1 at 10, 36.  However, "loss of income . . . falls far short of the type of irreparable harm which is a necessary predicate to the issuance of a temporary injunction in this type of case."  *Hyde v. KLS Professional Advisors Group, LLC*, 500 F. App'x 24, 25 (2d Cir. 2012) (summary order) (quoting *Sampson v. Murray*, 415 U.S. 61, 94 (1974), in which "the Court vacated a preliminary injunction that precluded a government agency from terminating an employee").  Plaintiffs similarly did not explain why any irreparable injury would result "before the adverse party can be heard in opposition"; they were first informed on November 29, 2021 that their accommodation would be ending at a future date and then were informed of the specific end date—February 25, 2022—weeks in advance, on February 3, 2022.  Dkt. No. 1-1 at 10, 36.[1]  Plaintiffs' petitions were filed in state court on February 24, 2022, and provide no indication as to why they could not have been filed earlier in order to afford the FRBNY an opportunity to be heard in opposition.  Rule 65(b)(1)(B) also requires that "the movant's attorney certif[y] in writing any efforts made to give notice and the reasons why it should not be required."  Plaintiffs each submitted affidavits in state court indicated that on February 22, 2022 in the morning, they spoke with Phyllis Cecero, who is the Executive Assistant to the FRBNY General Counsel.  Dkt. No. 1-1 at 31, 63.  Plaintiff Diaz's affidavit indicates just that she "spoke to" her at 10:45am, *id.* at 63; Plaintiff Gardner-Alfred's affidavit indicates that at 11:33am she "told her I was filing an OSC," and "[s]he said she would notify the General Counsel," *id.* at 31.  Although these affidavits do identify efforts made to give notice, they do not provide any reasons

---

[1] Plaintiffs' affidavits indicate that "[o]n or about February 3, 2022, Respondent noticed Petitioner's that we would be terminated on January 25, 2022."  *Id.*  However, the cited exhibits reflect that the February 3rd email informed Plaintiffs that they would be terminated on February 25, 2022.  *Id.* at 30, 62.

5

why notice should not be required.

Second, the TRO entered in state court does not comply with the requirements of Rule 65(b)(2), which states that "[e]very temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record." Fed. R. Civ. P. 65(b)(2). The TRO states the date on which it was issued, but it omits the hour; it describes the injury in the course of describing the relief ordered—"Pending the hearing of this Motion, Respondent is enjoined & restrained from terminating the employment of the Petitioners named herein"—but it fails to describe why that injury was irreparable and why the TRO was issued without notice. Dkt. No. 1-1 at 4–5.

For foregoing reasons, the state court's entry of this TRO does not satisfy the requirements of Federal Rule of Civil Procedure 65. Those requirements are not trivial; "[t]he stringent restrictions imposed . . . by Rule 65[] on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods*, 415 U.S. at 439. Accordingly, the TRO is dissolved as improperly issued under Rule 65. *See Rabbi Jacob Joseph School v. Province of Mendoza*, 342 F. Supp. 2d 124, 127 (E.D.N.Y. 2004) ("The temporary restraining order that was issued without notice to the attorney for the Defendant whose identity was known, without declaring in an affidavit or verified complaint that immediate and irreparable harm would result before the adverse party or his attorney could be heard in opposition, was plainly in violation of Fed.R.Civ.P. 65(b), and the temporary restraining order was vacated for the additional reason that it was improperly issued."); *Dolan v. Portaro*, 2015 WL 3444351, at *1 (N.D. Ohio May 28,

6

2015) ("Had Plaintiff Dolan initially filed this case in this Court, the TRO could not have been granted. When the motion for a TRO was first made in state court, Plaintiff's counsel did not provide the required certification as to what efforts were made to give notice and why notice should not be required. Nor did Plaintiff's counsel file such certification in this Court after removal. That deficiency alone justifies dissolving the TRO.").

Moreover, "[o]n this motion to dissolve a temporary restraining order, . . . the party that obtained that order . . . bears the burden of justifying continued injunctive relief." *Gardner v. Weisman*, 2006 WL 2423376, at *1 (S.D.N.Y. Aug. 21, 2006) (internal quotation marks omitted) (quoting *SC Cowen Sec. Corp. v. Messih*, 2000 WL 663434, at *1 (S.D.N.Y. May 17, 2000)). The FRBNY argues that the evidence submitted by Plaintiffs does not satisfy that burden, because they have not shown irreparable harm, a likelihood of success, or a balance of hardships in their favor. "[T]he standard for entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). "A party seeking a TRO, like one seeking a preliminary injunction, must typically show four elements: (1) a likelihood of success on the ultimate merits of the lawsuit; (2) a likelihood that the moving party will suffer irreparable harm if the TRO is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by the relief granted." *Free Country Ltd. v. Drennan*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

Plaintiffs have not shown irreparable harm here, which is "single most important

prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (internal quotation marks omitted) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)).  Plaintiffs' argument that they will suffer irreparable harm absent this injunctive relief hinges entirely on their case law recognizing that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  Dkt. No. 14 at 4 (internal quotation marks omitted) (quoting *Elrod v. Burns*, 427 U.S. 347 (1976)).  Plaintiffs' petitions here, however, do not allege any violation of their First Amendment freedoms; their operative pleadings assert no Free Exercise claims.  Rather, they challenge the vaccination policy not as impinging on their free exercise of religion but because it is "clearly discriminatory, arbitrary, and capricious," and "is not supported by scientific knowledge and fact but fear and intimidation."  Dkt. No. 1-1 at 11, 37.  Although it is undisputed that absent injunctive relief, Plaintiffs will suffer the economic harm of losing their jobs, "[i]t is well settled . . . that adverse employment consequences are not the type of harm that usually warrants injunctive relief because economic harm resulting from employment actions is typically compensable with money damages." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294–95 (2d Cir. 2021) (citing *Sampson*, 415 U.S. at 91–92, for the proposition that "loss of income and . . . the claim that her reputation would be damaged . . . falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction"; and then citing *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988) for the proposition that "[s]ince reinstatement and money damages could make appellees whole for any loss suffered during this period, their injury is plainly reparable and appellees have not demonstrated the type of harm entitling them to injunctive relief").  Plaintiffs also have not demonstrated a likelihood of success on the merits of their claims; their operative pleadings are

wholly conclusory, and their arguments regarding a likelihood of success on the merits again hinge entirely on the Free Exercise claims, Dkt. No. 14 at 5; once again, the operative pleadings assert no Free Exercise claims.  As such, Plaintiffs have not carried their burden of justifying continued injunctive relief.  For this additional reason, the TRO must be dissolved.

SO ORDERED.

Dated: March 11, 2022
      New York, New York

                                               LEWIS J. LIMAN
                                      United States District Judge