USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/06/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
LORI GARDNER-ALFRED and JEANETTE DIAZ,                             :
                                                                   :
                        Plaintiffs,                                :
                                                                   :     22-cv-01585 (LJL)
          -v-                                                      :
                                                                   :     OPINION AND ORDER
FEDERAL RESERVE BANK OF NEW YORK,                                  :
                                                                   :
                        Defendant.                                 :
                                                                   :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Lori Gardner-Alfred ("Gardner-Alfred") and Jeanette Diaz ("Diaz" and with Gardner-Alfred, "Plaintiffs) move, pursuant to Federal Rule of Civil Procedure 37(a) to compel Defendant Federal Reserve Bank of New York ("New York Fed" or "Defendant") to reproduce their Rule 30(b)(6) deponent and to produce five individuals for deposition: Helen Mucciolo, Karen Lynch, Altheia Graham, Amy Chiaravallo, and Danielle Levitt. Dkt. No. 95. Defendant New York Fed moves to compel the production of documents. Dkt. No. 97. For the following reasons, Plaintiffs' motion to compel is denied and Defendant's motion to compel is granted.

I.     **Plaintiffs' Motion to Compel**

    A.     **Rule 30(b)(6) Deposition**

A corporation in receipt of a proper Rule 30(b)(6) notice of deposition must make available a witness who is able "'to give complete, knowledgeable and binding answers' on its behalf." *Reilly v. NatWest Markets Grp., Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) (quoting *Securities & Exchange Comm'n v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y.1992)). "[I]f witnesses designated pursuant to Rule 30(b)(6) lack 'personal knowledge concerning the matters set out in the deposition notice,' then 'the corporation is obligated to prepare them so that they may give

knowledgeable answers.'" *Bigsby v. Barclays Capital Real Estate, Inc.*, 329 F.R.D. 78, 80–81 (S.D.N.Y. 2019) (quoting *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, 2009 WL 3270794, at *3 (S.D.N.Y. Oct. 13, 2009)). "Pursuant to Rule 30(b)(6), the deponent 'must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters.'" *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997) (quoting *Morelli*, 143 F.R.D. at 45).

Plaintiffs have not shown that Defendant failed to properly prepare its witness. Plaintiffs first argue that the New York Fed's 30(b)(6) witness was not prepared adequately to testify to the topic Plaintiffs described as "[t]he Federal Reserve Bank of New York's mandate concerning COVID-19 vaccines." Dkt. No. 95-1. When the deponent was first asked at the deposition about the New York Fed's COVID-19 mandate, the question drew an objection and then the witness testified that she had "heard people refer to the COVID-19 vaccine policy as a mandate." Dkt. No. 95-2 at ECF pp. 4–5. She was then asked what she understood the term "mandate" used by those people to mean and she answered that she was "hesitant to respond" because the term was used differently "depend[ing] on the conversation that's being had." *Id.* at ECF pp. 5–6. The witness then testified that the New York Fed had a COVID-19 vaccination policy and that she had reviewed the policy in preparation for the deposition. *Id.* at ECF p. 6. Plaintiffs had a right to a witness properly prepared to discuss the New York Fed's COVID-19 policy. They received that witness. They did not have a right to have that witness use the vernacular chosen by Plaintiffs for purposes of this litigation. *See Fashion Exch. LLC v. Hybrid Promotions, LLC*, 2019 WL 1533212, at *2 (S.D.N.Y. Apr. 9, 2019) ("Plaintiff's dissatisfaction with [defendant's]

2

selection of its Rule 30(b)(6) witnesses is an insufficient ground to order additional Rule 30(b)(6) depositions.").

Plaintiffs' remaining two objections also are without merit. Plaintiffs argue that the witness was not prepared to testify on the topics of "[a]ny national Federal Reserve Bank mandates concerning COVID-19 vaccines," and "[a]ny national Federal Reserve Bank policies concerning any accommodations, exceptions, or exemptions of its mandate concerning COVID-19 vaccines." Dkt. No. 95 at 2; Dkt. No. 95-1. The witness testified that there was no national Federal Reserve Bank COVID-19 mandate. Dkt. No. 95-2 at ECF pp. 10–11. She testified that she was "aware of other Federal Reserve District bank COVID-19 policies," but that each Reserve Bank set up its own policies based on a "myriad of variables they would have considered based on their business and their locality." *Id.* at ECF p. 10. When asked specifically, "Was there any national policy with regards to the Federal Reserve districts in terms of COVID-19 vaccination," she answered "No." *Id.* at ECF pp. 10–11. Plaintiffs were entitled to the well-prepared witness they received. They were not entitled to the answers that they desired. *See Hybrid Promotions, LLC*, 2019 WL 1533212, at *2; *see also Reilly*, 181 F.3d at 268 (an organization satisfies its obligations under Rule 30(b)(6) by providing a witness who is able to give "complete, knowledgeable and binding answers on its behalf.").

**B.  Depositions of Helen Mucciolo, Karen Lynch, Altheia Graham, Amy Chiaravallo, and Danielle Levitt**

The Amended Case Management Plan and Scheduling Order in this case provided that the deadline for the parties to serve deposition notices was October 10, 2022 and the deadline for all discovery to be completed was February 17, 2023. Dkt. No. 67. By order of January 18, 2023, the Court set a deadline for depositions to be completed by February 17, 2023, expert reports and disclosures to be made by March 24, 2023, and all discovery to be completed by

April 28, 2023, with summary judgment briefing to follow. Notwithstanding those deadlines, Plaintiffs seek an order compelling Defendant to produce Helen Mucciolo and Karen Lynch for depositions on the grounds that their depositions were noticed before the close of discovery on October 20, 2022, and Altheia Graham, Amy Chiaravallo, and Danielle Levitt on the grounds that they were listed in Defendant's Rule 26(a)(1) initial disclosures and that there would be no prejudice to Defendant in taking their depositions out of time. Dkt. No. 95 at 3.

Plaintiffs must show good cause for a scheduling order to be modified. *See* Fed. R. Civ. P. 16(b)(4). The movant must show that despite due diligence, it could not have reasonably met the scheduled deadlines. *See Furry Puppet Studio Inc. v. Fall Out Boy*, 2020 WL 4978080, at *1 (S.D.N.Y. Feb. 24, 2020). It is not sufficient to show an absence of prejudice.[1] "The following factors are not compatible with a finding of diligence and do not provide a basis for relief: carelessness, an attorney's otherwise busy schedule, or a change in litigation strategy." *Id.*

Plaintiffs have not shown good cause why the depositions of Mucciolo and Lynch—which were noticed in October—could not be taken before February 17, 2023. Plaintiffs have shown no cause at all why the other three depositions could not even have been noticed, particularly when Plaintiffs were aware of the depositions from Defendant's Rule 26(a)(1) initial disclosures. It is the very purpose of Rule 26(a)(1) to ensure that a party knows at a very early date of the witnesses its opponent intends to use to support a claim or defense so that the party can notice any depositions it will need.

---

[1] Plaintiffs also have not shown an absence of prejudice. As a result of Plaintiffs' delay one of the principal lawyers for Defendant is unavailable due to a pre-planned absence as to which all parties and the Court were aware, and the requested depositions would interfere with the schedule for the remainder of the case. Dkt. No. 96 at 1 & n.1, 3.

II.     **Defendant's Motion to Compel**

Defendant seeks an order compelling: (a) Gardner-Alfred to produce her complete Vaccine Exemption Package from a "Revered Dr." Phillip Valentine, records of payments to Valentine, and documents regarding her taking of ivermectin and other medicine relevant to her alleged religious beliefs (RFP Nos. 2, 15–16); and (b) Diaz to produce records of her request for a religious accommodation from Moody's vaccination policy.  Dkt. No. 97 at 2.  Defendant also seeks an order compelling Plaintiffs to make complete searches of all document repositories in response to Defendant's requests for production of documents, including documents located on (1) email accounts; (2) WhatApp, Instagram, and Facebook accounts; (3) iCloud accounts; (4) tablets; and (5) a computer based on the full date range requested by Defendant and without limitation as to specific individuals, including documents generated by using an additional seven search terms provided by the New York Fed.  *Id.* at 2–3.

Rule 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "Relevance is . . . to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."  *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Hoxhaj v. Michael Cetta, Inc.*, 2022 WL 1664963, at *1 (S.D.N.Y. May 25, 2022); *Sec. & Exch. Comm'n v. Rayat*, 2022 WL 1423300, at *2 (S.D.N.Y. May 5, 2022).

A.      **Request for Documents Regarding Temple of Healing Spirit**

Gardner-Alfred claims to be "a member of the Temple of Healing Spirit," which has a "system of beliefs [that] prioritizes holistic approaches to health focused on diet and spiritual self-awareness, and opposes the invasive techniques of traditional Western medicine."  Dkt No.

5

24 ¶ 17. She alleges that "by reason of their provenance, chemical composition, and origin, the COVID-19 vaccines represent unacceptable intrusions on her personal form." *Id.* ¶ 18. Defendant has adduced evidence from the deposition of Gardner-Alfred that the Temple of Healing Spirit was founded by "Reverend Dr." Phillip Valentine. Dkt. No. 97 at 2. Defendant has also proffered evidence, from its independent investigation, that Valentine advertises a "Vaccine Exemption Package" on Facebook that any person—regardless of religious affiliation—can purchase for $475 plus shipping and handling, and that the Vaccine Exemption Package includes a standard-form affidavit providing the purchaser with a purported religious exemption. *Id.* Gardner-Alfred testified that she paid Valentine for the exemption documents, including the affidavit that she signed and submitted to the New York Fed in support of her claimed religious accommodation request. *Id.* Yet, she did not produce her payment for the exemption paperwork and did not produce most pages of the Exemption Package because, in her view, she "didn't feel [she] needed to." *Id.* (quoting Dkt. No. 97-5 at 165:5–167:3). In addition, Gardner-Alfred admitted that over the years she has taken medications and undergone elective medical procedures that are apparently against her purported religious beliefs, including taking ivermectin and over-the-counter pills for which records have not been produced. *Id.* In light of this testimony, Defendant seeks discovery of Gardner-Alfred's complete Vaccine Exemption Package, payments to Valentine, and documents regarding ivermectin and other medicines. *Id.*

The requested documents are relevant and proportional to the needs of the case. To make out a prima facie case of religious discrimination, Gardner-Alfred would have to show—among other things—that she held a bona fide religious belief that conflicted with an employment requirement. *See Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006). As the Court previously identified, one of the principal questions in the case will be whether Plaintiffs' alleged

6

religious beliefs were "sincerely held" and whether they were in their own scheme of things, "religious." *See Gardner-Alfred v. Fed. Rsrv. Bank of New York*, 2023 WL 253580, at *18 (S.D.N.Y. Jan. 18, 2023) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). It is therefore appropriate for Defendant to probe the sincerity of Gardner-Alfred's alleged religious beliefs. *See, e.g., Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985) ("[I]t is entirely appropriate, indeed necessary, for a court to engage in analysis of the sincerity" of the religious beliefs of a plaintiff asserting failure-to-accommodate claims); *Kane v. de Blasio*, 575 F. Supp. 3d 435, 442 (S.D.N.Y. 2021), *aff'd sub nom. Keil v. City of New York*, 2022 WL 619694 (2d Cir. Mar. 3, 2022) ("It appears that such information is geared towards developing a factual basis for reaching a conclusion as to whether any particular Plaintiff's beliefs are sincerely held and religious in nature, both of which are permissible inquiries and questions of fact."); *Sughrim v. New York*, 2020 WL 4390744, at *2 (S.D.N.Y. Aug. 1, 2020) ("despite Plaintiffs' protestations to the contrary, they put the sincerity of their religious beliefs at issue by filing this action. [] Accordingly, Plaintiffs should respond to the State's requests for information regarding their religious beliefs."); *United States v. New York Metro. Transp. Auth.*, 2006 WL 708561, at *2 (E.D.N.Y. Jan. 12, 2006) ("The NYCTA is entitled to discover the basis for plaintiffs' alleged bona fide religious beliefs to test their sincerity."); *Tapp v. Stanley*, 2006 WL 8456487, at *1 (W.D.N.Y. Sept. 19, 2006) ("I find that the information sought by plaintiff is within the broad scope of discovery permitted by the Federal Rules of Civil Procedure. . . . Such records may contradict or raise an issue of fact as to defendants' arguments that plaintiff's religious beliefs are insincere."). Evidence that Gardner-Alfred became a member of the Temple of Healing Spirit only in light of the COVID-19 pandemic and only in order to secure an

exemption from Defendant's vaccine policy would go some way in showing that her religious views were not sincerely held and thus fit within the broad bounds of relevance under Rule 26.[2]

### B.     Request for Religious Accommodation Request Diaz Submitted to Moody's

Diaz testified that she is currently employed at Moody's and that she submitted through her personal email a request for religious accommodation from Moody's vaccination policy. Dkt. No. 97 at 2.  Yet she has refused to produce documents related to that request claiming that they are not relevant and cumulative to her deposition testimony.  *Id.*  In the amended complaint, Diaz claims that she is a baptized Catholic who declined to receive the COVID-19 vaccine based on her religious convictions that it is morally unacceptable for her to receive certain vaccines consistent with the teachings of the Catholic church.  Dkt. No. 24 ¶ 19.  She claims the sincere religious conviction, among others, that a person is morally required to obey his or her conscience and not to be vaccinated unless she wants to be vaccinated.  *Id.* ¶ 20.  Diaz argues that the documents are not relevant and that they are cumulative to her deposition testimony. Dkt. No. 100 at 3.  The Court disagrees.  Whether Diaz requested an accommodation from her current employer, what that accommodation was, and the grounds on which she requested the accommodation all go to whether she had a bona fide religious belief that prevented her from satisfying her employments obligations to Defendant and are relevant.  Contrary to Diaz's

---

[2] Plaintiffs argue that the Court should accept Gardner-Alfred's representation that she has no documents to produce responsive to these requests because it accepted Defendant's representation that no documents existed with respect to one of Plaintiffs' document requests. Dkt. No. 97-3; Dkt. No. 97-5; Dkt. No. 100 at 3.  The two are not equivalent.  Defendant explained why no documents existed with respect to that request of Plaintiffs.  Dkt. No. 93 at 3. Here, Gardner-Alfred provides no reason for why these documents that seemingly would exist do not. Dkt. No. 100 at 2–3.  For example, she testified that she paid Valentine through either Zelle or Cash App.  Dkt. No. 97-5 at 163:12–15.  It is thus not credible that she does not have documents regarding her payment to Valentine.

implied assertion, Defendant is not required to limit itself to Diaz's deposition testimony.  It is entitled to probe her answers and her claims by requesting relevant documents.

### C. Request for Complete Document Search

Finally, Defendant requests an order compelling Plaintiffs to conduct complete searches of all document repositories.  Dkt. No. 97 at 2–3.  Defendant proffers that Diaz has not produced responsive files from her iPhone despite repeatedly representing since mid-January 2023 that such files were forthcoming, *id.*, and that Plaintiffs identified at their depositions document repositories that were not searched, specifically, email accounts, WhatApp accounts, Instagram accounts, Facebook accounts, an iCloud account, tablets, and a computer, *id.* at 3.  Defendant also proffers that Plaintiffs used arbitrary date ranges, limited prior searches to specific individuals even though Defendant's requests for production sought relevant communications with any individual over a broader date range, and used unreasonably narrow search terms.  *Id.*  Plaintiffs oppose the request on the grounds that discovery is now closed, they have produced a substantial volume of documents, and they have searched Diaz's phone and produced responsive documents and produced documents from Gardner-Alfred's phone and three email accounts "between the Plaintiffs."  Dkt. No. 100 at 3.

Each of the requests Defendant now makes was made within the time period for discovery.  Dkt. Nos. 97-1, 97-2 (document requests).  Defendant has made its motion to compel within the time period granted by the Court for such motions.  Dkt. Nos. 89, 92.  Rule 26(g) requires the attorney or party producing documents to certify that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the discovery response is "complete and correct as of the time it is made."  Fed. R. Civ. P. 26(g)(1)(A).  The rule carries with it the obligation on the responding party's counsel to "monitor compliance so that all sources of discoverable information are identified and searched."  *Beverly Hills Teddy Bear Co.*

9

*v. Best Brands Consumer Prod., Inc.*, 2020 WL 7342724, at *13 (S.D.N.Y. Dec. 11, 2020) (quoting *Ryan v. Rock Grp., NY. Corp.*, 2019 WL 6841874, at *4 (S.D.N.Y. Dec. 16, 2019)).

Because it appears that all sources of discoverable information have not been identified, Plaintiffs shall produce all additional documents (including WhatsApp messages and images) responsive to Defendant's document requests from Gardner-Alfred's iPhone, email accounts, iCloud account, and tablet based on the dates in Defendant's document requests and using Plaintiffs' search terms plus the additional seven search terms provided by the New York Fed that Plaintiffs agreed to run. Those searches are to include emails in the account NAlfred26@gmail.com as well as Alfred26@gmail.com (which is the email address registered to Gardner-Alfred's daughter and which is sometimes used by Gardner-Alfred). Dkt. No. 97-5 at 252:16–253:7, 288:18–289:15. The production shall include the image of the antibody test for COVID-19 taken by Gardner-Alfred, which is relevant to testing her allegations in the amended complaint that she had contracted COVID-19 and had acquired robust and lasting natural immunity to the virus. Dkt. No. 24 ¶ 24. Plaintiffs shall also produce all additional documents (including WhatsApp messages and images) responsive to Defendant's document requests from Diaz's iPhone, her iCloud account, her computer (which has a backup of her entire phone), and her tablet, based on the dates in Defendant's document requests and using Plaintiffs' search terms plus the additional seven search terms provided by the New York Fed that Plaintiffs agreed to run. Although Plaintiffs state that they did search Diaz's phone and Gardner-Alfred's phone, Dkt. No. 100 at 3, the testimony and record establishes that the search was conducted by Plaintiffs themselves, that it was haphazard and cannot be recreated or documented, Dkt. No. 97-5 at 222:16–224:16, 228:5–229:12; Dkt. No. 97-9 at 348:2–19, and that their production was incomplete, Dkt. No. 97 at 3.

The Court declines to order Plaintiffs' counsel specifically to search Plaintiffs' social media accounts for further responsive documents.  "[S]ocial media information may be a source of relevant information that is discoverable."  *Reid v. Ingerman Smith LLP*, 2012 WL 6720752, at *1 (E.D.N.Y. Dec. 27, 2012).  However, this evidence is likely to be available through a search of backups of Plaintiffs' phones, tablets/iPads, and computers.  There is also evidence that Diaz provided access to her social media accounts to counsel, *see, e.g.*, Dkt. No. 97-9 at 312:9–24, and while Gardner-Alfred testified that she had not provided counsel with access to her Instagram and Facebook accounts, she does not appear to have testified that such accounts had responsive information, *see* Dkt. No. 97-5 at 28.  Furthermore, Defendant has presented no evidence to date that those locations are likely to have responsive documents or that, to the extent that they would have responsive documents, such documents have not already been produced.  However, the Court will extend the time for Plaintiffs generally to produce responsive documents by two weeks from today in the event that further inquiry by Plaintiffs' counsel leads it to conclude that there are additional responsive documents that have not been produced but that should be produced located on Plaintiffs' social media accounts.

### D. Other Requests

Defendant also requests that Plaintiffs produce the following documents or files that were included in the requests for production of documents and requested during the depositions of Plaintiffs but that have not yet been produced:  (1) a list of URLs visited by Diaz after placing the words "Covid-19 virus" or any words similar to those in the Google search engine; (2) Diaz's electronic notes regarding this litigation; (3) Diaz's income from companies owned by her; and (4) Gardner-Alfred's current income.  Plaintiffs' sole objection is the generalized one that Defendant has failed to make a "particularized showing for its need for any such documents, let alone their proportionality to the needs of the case."  Dkt. No. 100 at 3.  Defendant need not

11

make a particularized showing, but only a showing of relevance. The limited requests are far from disproportionate to the needs of the case.

### E.     Summary

To summarize, Plaintiffs shall produce the following categories of responsive documents as listed on Defendant's letter of February 10, 2023, Dkt. No. 97-3, specifically request numbers three, four, five, and eight. Plaintiffs shall also search the locations as indicated above with the parameters indicated above for responsive documents.

## CONCLUSION

Plaintiffs' motion to compel is DENIED and Defendant's motion to compel is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 95, 97.

SO ORDERED.

Dated: March 6, 2023
       New York, New York

                                          LEWIS J. LIMAN
                                          United States District Judge