UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/17/2023
```

------------------------------------------------------------------------X
                                                                        :
LORI GARDNER-ALFRED and JEANETTE DIAZ,                                   :
                                                                        :
                        Plaintiffs,                                     :
                                                                        :            22-cv-01585 (LJL)
                                                                        :
        -v-                                                             :
                                                                        :            OPINION AND ORDER
FEDERAL RESERVE BANK OF NEW YORK,                                        :
                                                                        :
                        Defendant.                                      :
                                                                        :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

        Defendant Federal Reserve Bank of New York ("New York Fed" or "Defendant")

moves, pursuant to Federal Rules of Civil Procedure 16, 26, and 37, for an order imposing

discovery sanctions on plaintiffs Lori Gardner-Alfred ("Gardner-Alfred") and Jeanette Diaz

("Diaz" and, together with Gardner-Alfred, "Plaintiffs").  Dkt. No. 119.  Specifically, Defendant

seeks the following relief:  (1) an order directing that it be taken as established that Plaintiffs

wrongfully withheld files relevant to their reasons for opposing Covid-19 vaccines; (2) adverse

inferences relating to the documents Plaintiffs continue to withhold, specifically, that (i) the

documents withheld by Gardner-Alfred regarding the contents of her vaccination exemption

package and her payment to the "Reverend Dr." Valentine would show she purchased the same

vaccination exemption package, in the same way and for the same amount, as the New York

Fed's independent investigator, and (ii) the documents withheld from Plaintiffs' custodial files,

including emails, Diaz's notes, and Diaz's URL list, would have contained additional non-

religious, anti-vaccination views; and (3) reasonable expenses, including attorneys' fees.  *Id.* at 3.

With respect to attorneys' fees, Defendant seeks reasonable attorneys' fees incurred in making

the present motion and through call and email correspondences with opposing counsel from

March 21, 2023 to the present date regarding Plaintiffs' discovery deficiencies, as well as expenses incurred in connection with the February 27 motion to compel and Plaintiffs' February 23 motion to compel depositions.  Dkt. No. 120 at 17–18.

For the reasons set out below, the motion for sanctions is granted in part and denied in part.

**BACKGROUND**

Familiarity with the prior proceedings in this case is assumed.

**I.      Background to the Dispute**

Plaintiffs are both former longtime employees of Defendant whose employment was terminated in March 2022 when they refused to comply with Defendant's requirement that its employees be vaccinated against the Covid-19 virus.  Dkt. No. 24 ¶ 1. Gardner-Alfred was employed by Defendant as a Senior Executive Specialist to an Executive Vice President of Defendant.  *Id.* ¶ 2.  She also claims to be a member of the Temple of Healing Spirit, a system of beliefs that prioritizes holistic approaches to health focused on diet and spiritual self-awareness, and opposes the invasive techniques of traditional Western medicine.  *Id.* ¶ 17.  Diaz was most recently employed by Defendant in the position of Senior Executive Specialist, providing direct administrative support to the Executive Vice President of Information Technology.  *Id.* ¶ 11.  She claims to be a baptized Catholic who holds the sincere religious convictions that "[v]accination is not morally obligatory in principle and so must be voluntary," that "it is permissible to use . . . vaccines [created using human cell lines derived from abortion] only under case-specific conditions—if there are no other alternatives available and the intent is to preserve life," "[a] person's assessment of whether the benefits of a medical intervention outweigh the undesirable side-effects are to be respected unless they contradict authoritative Catholic moral teachings," and "[a] person is morally required to obey his or her conscience."  *Id.* ¶¶ 19–20.

2

On or about August 2, 2021, in response to the Covid-19 pandemic, Defendant implemented a Covid-19 vaccination policy ("Vaccination Policy"), requiring that every employee be fully vaccinated against Covid-19.  *Id.* ¶ 28.  Effective on December 8, 2021, the Vaccination Policy required that every employee of Defendant be fully vaccinated against Covid-19 and receive a booster shot within thirty days of becoming eligible to do so.  *Id.* ¶ 29. The Vaccination Policy provided for certain religious and medical exemptions.  *Id.* ¶ 30.

Both Gardner-Alfred and Diaz refused to become vaccinated.  According to the allegations in the Amended Complaint, "[f]or Plaintiff Gardner-Alfred, by reason of their provenance, chemical composition, and origin, the COVID-19 vaccines represent unacceptable intrusions on her personal form," *id.* ¶ 18, and Diaz "declined to receive the COVID-19 vaccine because of her religious convictions that it is morally unacceptable for her to receive certain vaccines consistent with the teachings of the Catholic Church," *id.* ¶ 19.  In August and September 2021, both Plaintiffs submitted requests for exemptions from the Vaccination Policy. *Id.* ¶¶ 33–34.  Each participated in a religious exemption interview conducted by Defendant in September 2021.  *Id.* ¶ 35.  On or about October 1, 2021, the two Plaintiffs were individually notified that Defendant had temporarily granted a request for an accommodation through November 30, 2021, and was not requiring them to return to work.  *Id.* ¶ 36.  On or about November 1, 2021, however, Defendant announced an official return to work date of January 10, 2022.  *Id.* ¶ 37.  On or about November 29, 2021, Defendant separately informed each Plaintiff by email that their exemption from the Vaccination Policy would end.  *Id.* ¶ 41.  By email dated February 3, 2022, Defendant informed Plaintiffs that their temporary accommodations, exempting them from the Vaccination Policy, which had previously been extended, would end on February 25, 2022, and that their employment would be terminated.  *Id.* ¶ 63.  On March 14,

2022, after Plaintiffs had been refused an accommodation and had refused to become vaccinated, Defendant terminated their employment.  *Id.* ¶ 68.

Plaintiffs allege that their terminations violated the Religious Freedom Restoration Act; the Free Exercise Clause of the First Amendment; and Title VII, 42 U.S.C. §§ 2000e *et al.*  *Id.* ¶¶ 73–111.[1]

Defendant denies that Plaintiffs' sincerely held religious beliefs prevented them from becoming vaccinated, Dkt. No. 84 ¶ 1, and alleges as an affirmative defense that its "actions with respect to Plaintiffs and concerning Plaintiffs' employment were based solely on legitimate, non-discriminatory, and non-retaliatory business reasons, and were the result of a good faith effort to comply with the law," *id.* at ECF p. 15 (Third Affirmative Defense).  For its Ninth Affirmative Defense, Defendant alleges: "Plaintiff cannot establish a conflict with, or burden on, bona fide or sincerely held religious beliefs."  *Id.* at ECF p. 16.

## II.    The History of Plaintiffs' Failures to Comply with Their Discovery Obligations

This case was first filed by Plaintiffs *pro se* in New York State Supreme Court, New York County, on February 23, 2022.  Dkt. No. 1-1.  Plaintiffs alleged that the Vaccination Policy was discriminatory, arbitrary, and capricious, *id.* at ECF p. 11, and sought protection from having their employment terminated, but did not raise any religious discrimination claims.  The case was removed to this Court on February 25, 2022.  Dkt. No. 1.

After the Court disposed of Defendant's motion to dissolve a temporary restraining order issued in state court and after Plaintiffs had filed an amended complaint, the Court entered a case

---

[1] Plaintiffs also alleged that Defendant's refusal to grant them an exemption violates the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.*; and the New York City Human Rights Law, N.Y.C. Administrative Code, § 8–101 *et seq.*  Dkt. No. 24 ¶¶ 112–15.  By opinion and order of January 18, 2023, the Court granted Defendant's motion to dismiss the state and city law claims, while sustaining the federal claims.  Dkt. No. 83.

management plan and scheduling order dated July 8, 2022.  The case management plan and
scheduling order set a date of October 31, 2022 for the completion of fact discovery and
December 14, 2022 for the completion of all discovery.  Dkt. No. 44.

Almost from the start, Plaintiffs delayed producing documents and information in
response to Defendant's discovery requests.  On October 25, 2022, Defendant filed a motion to
compel Plaintiffs to comply with their discovery obligations, to produce all outstanding non-
privileged communications, and to appear for depositions.  Dkt. No. 53.  Defendant noted that it
was not until October 11, 2022, with depositions scheduled to begin the next day and the close of
fact discovery approaching, that Plaintiffs "produced documents to the New York Fed and
represented that substantially all their documents had been produced."  *Id.* at 2.  In fact, Plaintiffs
produced a very limited number of apparently transcribed and annotated excerpts of messages
between them and a few other individuals that appeared to have been manually drafted using a
word processing software and without any explanation of how and by whom they had been
created.  *Id.*  Defendant also asked that the October 31, 2022 deadline for the completion of fact
discovery be extended.  *Id.* at 3.

On that same day, Plaintiffs' original counsel, Andrew St. Laurent on behalf of the law
firm Harris St. Laurent & Wechsler LLP ("HSW"), moved to withdraw as counsel.  Dkt. No. 49.
In a declaration and memorandum in support of that relief, HSW stated that "sharp
disagreements" had arisen between counsel and Plaintiffs "over the manner in which discovery
should be conducted in this case" and cited Plaintiffs' failure to cooperate with counsel as the
basis for withdrawal.  Dkt. No. 50 at 2–3; Dkt. No. 51 ¶ 17.  In the declaration, St. Laurent
stated: "over the last several weeks, Plaintiffs and HSW have had sharp disagreements over the
manner in which discovery should be conducted.  Notwithstanding significant efforts, including

numerous emails, lengthy phone calls and an in-person meetings, Plaintiffs and HSW have not been able to resolve those differences, which are, at this point, irreconcilable." Dkt. No. 51 ¶ 17.

On November 3, 2022, new counsel from Balestriere Fariello appeared for Plaintiffs, and HSW was relieved as counsel. Dkt. No. 59; Nov. 3, 2022 Minute Entry. At the conference on that date, the Court indicated that it would extend discovery. Nov. 3, 2022 Hearing Tr. 9. Plaintiffs' counsel from Balestriere Fariello indicated that he would confer with Defendant's counsel and propose mutually agreeable deadlines. *Id.* at 9–10.

New counsel for Plaintiffs at first represented that Plaintiffs' past discovery failures would be corrected. Shortly after being retained, Defendant conferred with Plaintiffs' new counsel and Plaintiffs agreed to "review, and, as necessary, undertake the further collection, search, and production of relevant and proportional documents and communications." Dkt. No. 62. Based on this representation, Defendant withdrew its October 25 motion to compel. *Id.* On November 22, 2022, the parties also submitted a proposed amended case management plan with fact discovery to be completed by December 23, 2022. Dkt. No. 63. In the joint letter sent to the Court, the parties represented that they believed that outstanding discovery items could be completed by that date, with the case then ready to proceed to trial. *Id.* The following day, November 23, 2022, the Court approved the revised case management plan. Dkt. No. 64. That revised schedule provided for fact discovery to be concluded by December 23, 2022, and extended the deadline for the exchange of rebuttal expert reports to February 10, 2023. *Id.* On December 16, 2022, the Court extended the deadline for the completion of fact discovery and depositions to January 27, 2023.[2] Dec. 16, 2022 Minute Entry.

---

[2] The Court granted this extension after Plaintiffs' new counsel had moved to compel Defendant to produce the following two categories of documents that were subject to a retaining lien asserted by HSW: (1) "Copies of all documents previously produced in [the action] by any

However, contrary to new counsel's representations, Plaintiffs continued to disregard their discovery obligations.  On January 3, 2023, with the close of fact discovery three weeks away, Defendant wrote to inform the Court that notwithstanding counsel's assurances that Plaintiffs would meet their discovery obligations, "Plaintiffs continue not to meet their discovery obligations.  They failed to meet and conference on a proposed [case management plan] as required by the Court; have not responded to the New York Fed's December 29, 2022 notification that the parties' prior documents are available upon payment of costs; still have not produced communications responsive to the New York Fed's document requests;[3] have refused to provide contact information for individuals identified by Plaintiffs in their initial disclosures despite repeated requests; and, as a result, continue to delay depositions."  Dkt. No. 77.  The Court entered an order the next day, January 4, 2023, scheduling a conference for January 13,

_____

party"; and (2) "Documents and communications sufficient to ascertain all documents that were searched or reviewed, or proposed to be searched or reviewed, by any party in connection with any document[] response to Document Request No. 1."  Dkt. No. 71.  The motion was ostensibly based on new counsel's assertion that production of the requested information would facilitate the completion of discovery.  Dkt. No. 65.  Defendant opposed the motion on the grounds that compliance with the document requests would cause Defendant to violate the retaining lien.  Dkt. No. 74.  The Court granted the motion to compel on December 27, 2022 with respect to Category (1), after holding that production of such documents would not interfere with the retaining lien, but denied it with respect to Category (2), which it observed, as drafted, called for work product in the form of "Defendant's notes as to every suggestion or proposal made by Prior Counsel with respect to the search Prior Counsel would conduct and every response Defendant provided to such proposal, however tentative."  *Id.* at 10.  The Court noted: "In the absence of an agreement with Defendant, if Plaintiffs want the record of every proposal exchanged between counsel in the course of discussions about document discovery, they will either have to satisfy the retaining lien or apply to the Court why they should be discharged from it and Prior Counsel required to provide the information."  *Id.* at 11.  Tellingly, Plaintiffs never satisfied the retaining lien or asked for such an order from the Court requiring their prior counsel to turn over lists of search terms exchanged with Defendant.  Notwithstanding the claimed urgency of the request, and Defendant having made copies of the prior-produced documents available for collection by Plaintiffs' new counsel by December 29, 2022, upon payment of costs, Plaintiffs did not respond to Defendant's counsel about delivery of the documents until days later.  Dkt. No. 77.
[3] This refers to the charging lien discussed in footnote 2.

2023, and directing Plaintiff to produce the information and discovery requested by Defendant by January 10, 2023, or to submit to the Court a letter explaining why Plaintiffs had failed to do so.  Dkt. No. 78

On January 10, 2023, Plaintiffs' counsel again promised that they could complete their remaining discovery by Thursday, January 19, 2023 (*i.e.*, eight days from the close of fact discovery), with all discovery to be completed by February 21, 2023 "pending timely receipt of files from [Defendant]."  Dkt. No. 79.  They noted "Plaintiffs' email account files are currently loaded into a discovery vendor platform and are being processed, allowing remaining document discovery to be completed in the coming days."  *Id.*

The Court held a conference on January 13, 2023.  Dkt. No. 87.  At the conference, counsel for Defendant informed the Court that in two telephone calls with counsel for Plaintiffs that very morning, counsel for Plaintiffs initially stated that he did not yet have authorization from his clients to produce any communications and then that he had just received authorization. *Id.* 4–5.  Counsel for Plaintiffs responded, "[t]he authorization that I was referring to was for very specific work that had come up just recently this week."  *Id.* at 10.  The Court ordered Plaintiffs to complete the production of documents responsive to Defendant's document requests by January 19, 2023, with depositions and the rest of fact discovery to be completed by February 17, 2023.  *Id.* at 6; Jan. 18, 2023 Minute Entry.  The Court set a deadline of February 2, 2023 for the parties to submit any discovery disputes to the Court.  Jan. 18, 2023 Minute Entry.

Yet, despite its representations to the Court and opposing counsel, Plaintiffs failed to comply with the Court's order requiring production on January 19, 2023.  On January 20, 2023, one day late, Plaintiffs made their first production of documents.  It consisted of 161 pages of

documents, with a privilege log identifying one withheld document.[4]  Dkt. No. 121-2.  In a telephone conversation with Defendant's counsel on January 18, 2023, Plaintiffs represented that the production would include "all responsive files, including all responsive emails from each Plaintiff, and all responsive files from Ms. Gardner-Alfred's phone, including text messages, iMessages, and WhatsApp communications," with the exception of documents from Diaz's cellphone as to which Plaintiffs represented that there were "technical issues with imaging the phone."  Dkt. No. 121-3 at ECF p. 8.  In an email dated January 23, 2023, Plaintiff's counsel represented that the communications from Diaz's cellphone would "likely take two further days to image" and that the production of communications from the phone was expected to be "quite small."  *Id.* at ECF p. 2.  The implication was plain—Plaintiffs had completed document production, except with respect to a small number of remaining documents.  This again would turn out to be a misrepresentation.

On February 2, 2023, counsel for Plaintiffs wrote the Court asking for an extension until February 9, 2023 to present any discovery disputes.  Dkt. No. 85.  In that letter, counsel for Plaintiffs characterized the issue with respect to the cellphone messages of Diaz as "a technical issue that has delayed the production of documents from the phone of Plaintiff Jeanette Diaz." *Id.*  The Court granted the request for the extension.  Dkt. No. 86.

Defendant met the deadline for submitting discovery disputes to the Court.  On February 9, 2023, counsel for Defendant wrote to bring to the Court's attention that, despite Plaintiffs' representation that its productions were complete with the exception of Diaz's phone

---

[4] Concerned about the low number of documents produced, Defendant sought to understand what repositories had been searched and what search terms had been used, as well as to ensure that all responsive documents had been produced.  On February 1, 2023, counsel for Plaintiffs provided Defendant with the search terms that it had used to search all repositories.  Dkt. No. 121-4.

records, there were numerous deficiencies in their production.  The deficiencies were significant: (1) Gardner-Alfred's February 6, 2023 deposition revealed that she had paid for "vaccine exemption paperwork" that she submitted to Defendant in support of her request for a religious accommodation but failed to produce the entire exemption paperwork she received in exchange for her payment or any payment records for that exemption paperwork; (2) Diaz still had failed to produce responsive files from her phone even though counsel for Plaintiffs had represented during a telephonic meet and confer between the parties that imaging was complete; (3) neither Plaintiff had produced documents regarding their mitigation efforts and, at their depositions, Plaintiffs both testified that they could not remember or did not know their current salaries and Gardner-Alfred could not recall the name of the contracting agency employing her; and (4) Plaintiffs' counsel had run overly narrow searches for emails from only three accounts and had indicated that they might refuse to use other search terms or to search other relevant document repositories.  Dkt. No. 89.  In light of the many outstanding documents to be provided by Plaintiffs before the close of discovery on February 17, 2023, Defendant again asked for an extension until February 27, 2023 to move to compel, *id.*, which the Court granted, Dkt. No. 92.[5]

On February 10, 2023, with the depositions of the two Plaintiffs now having been completed,[6] Plaintiffs produced an additional six pages of documents, Dkt. No. 130-1, and on February 23, 2023, Plaintiffs produced an additional eleven pages of documents, Dkt. No. 130-2. The latter date was six days after the close of fact discovery.

---

[5] On February 9, 2023, Plaintiffs filed a motion to compel Defendant to produce discovery.  Dkt. No. 91.  The Court denied that motion by order of February 14, 2023, Dkt. No. 94, and on March 8, 2023, the Court awarded Defendant expenses for having to respond to the motion, Dkt. No. 107.

[6] Diaz's deposition occurred on February 8, 2023 and Gardner-Alfred's deposition occurred on February 6, 2023.

On February 27, 2023, Defendant moved to compel Plaintiffs to produce many of the same documents that Defendant had previously notified the Court of in its February 9, 2023 letter and which still had not been produced.  Dkt. No. 97.  The motion to compel added detail with respect to those deficiencies: (1) the vaccine exemption package that Gardner-Alfred had submitted to Defendant was purchased from a "Reverend Dr." Phillip Valentine who claimed to be the founder of the Temple of Healing Spirit and was advertised for purchase for $475 plus shipping and handling but Gardner-Alfred still had failed to produce her vaccine exemption package or records of payments for it; (2) Diaz had failed to produce her request for accommodation from her new employer, Moody's; (3) Diaz still had not produced records from her cellphone; and (4) Plaintiffs had unduly narrowed the repositories they searched and the search terms they used.  *Id.*  On February 23, 2023, Plaintiffs also filed a motion requesting an order that the New York Fed re-produce a witness under Federal Rule of Civil Procedure 30(b)(6) and produce additional individuals for deposition and asking the Court to extend the fact discovery deadline to allow Plaintiffs to complete such depositions.  Dkt. No. 95.

On March 6, 2023, the Court entered an order granting Defendant's motion to compel production of documents from Plaintiffs and denying Plaintiffs' motion regarding depositions. Dkt. No. 105.  With respect to Plaintiffs' motion, the Court found that Plaintiffs had not shown that Defendant failed to properly prepare its 30(b)(6) witness and Plaintiffs had not shown good cause as to why the discovery deadline should be extended so that Plaintiffs could depose the additional witnesses.  *Id.* at 2–4.  As to Defendant's motion, with respect to the vaccine exemption package and documents regarding the Temple of Healing Spirit, the Court noted Gardner-Alfred's testimony that she did not produce most of the pages of the exemption package because she "didn't feel [she] needed to," but held that the requested documents were both

relevant and proportional to the needs of the case.  *Id.* at 6.  The Court rejected Diaz's argument that records of her vaccine exemption request from Moody's were irrelevant and cumulative, reasoning that such documents went to the question whether she had a bona fide religious belief that prevented her from complying with Defendant's Vaccination Policy.  *Id.* at 8–9.  The Court also held that the evidence indicated that Plaintiffs had not identified all sources of discoverable information and thus ordered Plaintiffs to produce (i) "all additional documents (including WhatsApp messages and images) responsive to Defendant's document requests from Gardner-Alfred's iPhone, email accounts, iCloud account, and tablet based on the dates in Defendant's document requests and using Plaintiffs' search terms plus the additional seven search terms provided by the New York Fed that Plaintiffs agreed to run"; and (ii) "additional documents (including WhatsApp messages and images) responsive to Defendant's document requests from Diaz's iPhone, her iCloud account, her computer (which has a backup of her entire phone), and her tablet, based on the dates in Defendant's document requests and using Plaintiffs' search terms plus the additional seven search terms provided by the New York Fed that Plaintiffs agreed to run."  *Id.* at 9–10.  The Court noted that although Plaintiffs claimed to have searched Plaintiffs' phones, the testimony and evidence established that the search was conducted by Plaintiffs themselves and was done in a haphazard manner.  *Id.*  The Court also ordered Plaintiff to produce the following documents that had not yet been produced: (1) a list of URLs visited by Diaz after placing the words "Covid-19 virus" or any words similar to those in the Google search engine ("URL List"); (2) Diaz's electronic notes regarding this litigation (the "Electronic Notes"); (3) Diaz's income from companies owned by her; and (4) Gardner-Alfred's current income.  *Id.* at 11.

The Court summarized its order as follows:  "Plaintiffs shall produce the following categories of responsive documents as listed on Defendant's letter of February 10, 2023, Dkt. No. 97-3, specifically request numbers three, four, five, and eight.  Plaintiffs shall also search the locations as indicated above with the parameters indicated above for responsive documents."  *Id.* at 12.  The March 6 order extended the time for Plaintiff to produce responsive documents by two weeks—*i.e.*, until March 20, 2023.  *Id.* at 11.  The categories of responsive letters referenced in Defendant's letter were as follows:

> 3. All documents related to Ms. Diaz's request to Moody's for a religious accommodation from Moody's Covid-19 vaccination requirement.

> 4. All documents, including bank statements and receipts, of payments made by Ms. Gardner-Alfred to Rev. Phil Valentine, including by Zelle, Cash App, or other electronic means, for vaccination-related paperwork.

> 5. All pages of any documents Ms. Gardner-Alfred received from Rev. Phil Valentine related to vaccinations or requests for an exemption or accommodation from a vaccination requirement, including the New York Fed's Vaccination Policy. . . .

> 8. All documents of Ms. Gardner-Alfred relating to ivermectin, including any prescriptions she received.

Dkt. No. 97-3.

The March 6 order still was not sufficient to induce Plaintiffs' compliance with their discovery obligations.  On March 22, 2023, Defendant's counsel wrote to the Court to indicate that Plaintiffs had failed to produce *any* documents to Defendant by the March 20, 2023 Court deadline and that Plaintiffs' counsel, without committing himself, represented only that he might be able to produce responsive documents by March 23, 2023—one day before the expert disclosure deadline of March 24, 2023.  Dkt. No. 108.  Defendant asked for an order compelling Plaintiffs' compliance by March 23, 2023 and a one-week extension of their deadline for expert reports and disclosures.  *Id.* at 2.  The Court directed Plaintiffs to respond by 5pm on March 23,

2023 why they should not be ordered to produce responsive documents by March 24, 2023 at 2:00 p.m.  Mar. 23, 2023 Minute Entry.  Plaintiffs' counsel wrote that they would produce all available documents by the afternoon of March 24, 2023, and would produce the remainder of the documents (described as "a small subset of documents which are still being processed") "as soon as possible."  Dkt. No. 110.

On March 24, 2023, the Court entered an order that Plaintiffs produce all available documents such that they would be received by Defendant by 5:00 p.m. that day with the remainder of the documents ordered to be produced by 5:00 p.m. on Monday March 27, 2023. The Court extended the deadline for expert reports to April 3, 2023, and the completion of all discovery to May 5, 2023.  Dkt. No. 111.

On March 24, 2023, over a month after the fact discovery deadline had closed, Plaintiffs produced an additional 183 pages of documents.  Dkt. No.  121-7.  On March 27, 2023, Plaintiffs produced an additional fifteen pages of documents.  Dkt. No. 121-8.  On March 30, 2023, three days after the Court's deadline of March 27, 2023, Plaintiffs produced a staggering 1,082 additional pages of documents many of which were from Diaz's custodial files.  Dkt. No. 121-10.  Plaintiffs' only explanation for the failure to comply was carelessness—counsel realized that the additional documents "inadvertently were not set aside for production."  Dkt. No. 121-9.

On April 3, 2023, Plaintiffs produced a purported expert report relating to damages that relied on eighty responsive documents that Plaintiffs failed to produce during fact discovery, including tax return information and information about current compensation and benefits.  On April 6, Plaintiffs produced the eighty new files without Bates stamps and provided Bates stamp references for the remainder of the documents.  Dkt. No. 115.  The Court granted Plaintiffs'

request for an extension of time to submit its rebuttal expert report from April 17, 2023 to April 21, 2023.  Apr. 11, 2023 Minute Entry.

On April 10, 2023, Plaintiffs provided an updated privilege log listing 187 new documents.  Dkt. No. 118 at 1–2.  On April 29, 2023, fewer than two hours after the deadline for Defendant's reply brief on the motion for sanctions, Plaintiffs disclosed for the first time that on March 20, 2023, Gardner-Alfred had received a written offer for a higher-paying, full-time job with a start date of April 3, 2023.  Dkt. No. 135.

Summary judgment motions in the case are due on June 15, 2023.  Dkt. No. 145.  Trial is scheduled for October 2, 2023.  Dec. 13, 2022 Minute Entry.

## III.    The Instant Motion

On April 19, 2023, Defendant filed the instant motion for Plaintiffs' non-compliance with discovery orders and obligations.  Dkt. No. 119.  Defendant claims that Plaintiffs violated the Court's January 13, March 6, and March 24 orders.  Defendant notes that Plaintiffs: (1) did not produce any documents as ordered by January 19, 2023, and even on January 20, 2023, made only a paltry production of 161 documents and a privilege log identifying one withheld document; (2) did not produce any documents in response to the March 6 order; (3) produced only 198 pages of documents in response to the Court's subsequent March 27, 2023 deadline but then produced 1,082 pages on March 30, 2023 and an additional 80 documents on April 3, 2023, notwithstanding the March 24 order to produce any remaining responsive documents by March 27, 2023; (4) continued to violate the March 6 and March 24 orders by (a) failing to produce the full contents of the vaccine exemption package Gardner-Alfred purchased and the records reflecting it; (b) failing to produce the Electronic Notes; (c) failing to produce the URL List; and

(d) refusing to turn over the majority of documents responsive to the Defendant's search terms on the grounds that they are "spam."  Dkt. No. 120 at 7.[7]

## IV.     The May 10, 2023 Hearing

The Court held a hearing on Defendant's motion for sanctions on May 9, 2023.  The Court directed the parties to provide to the Court at the hearing all of the documents withheld from production on the basis that they were spam and all other documents regarding contact with "Reverend Dr." Valentine or payment to Valentine.  May 1, 2023 Minute Entry.  The Court also directed Plaintiffs to attend the hearing and be prepared to testify at the request of either counsel for Plaintiffs or counsel for Defendant.  *Id.*

At the hearing, Plaintiffs brought boxes full of documents containing approximately 2,000 emails and other documents that had been withheld from production on the basis that they were irrelevant or "spam."  Plaintiffs claimed that no additional non-privileged documents regarding contact with Valentine or payment to Valentine existed.  At the conference, the Court reviewed some of the documents that had been withheld on the basis that they were spam, found that certain of the documents were relevant, and ordered, with the consent of the parties, that Plaintiffs produce the documents to Defendant.  May 9, 2023 Hearing Tr. ("Hearing Tr.") 2.

At the hearing, Plaintiffs called both Gardner-Alfred and Diaz to testify, and Defendant cross-examined both Plaintiffs at length.

---

[7] Defendant also raised Plaintiff's belated production of a privilege log listing 187 new documents including twelve emails that were plainly not privileged.  Dkt. No. 120 at 8. Plaintiffs subsequently produced the twelve non-privileged documents.

**DISCUSSION**

I.      **Sanctions Pursuant to Rule 16(f) and Rule 37(b) and 37(c)**

Defendant argues that sanctions are appropriate under Rule 16(f) and Rule 37(b) and

37(c)(1), and for Plaintiffs' repeated violations of Court orders.  Dkt. No. 120 at 8.

"Rule 16(f) authorizes sanctions for, among other things, the 'fail[ure] to obey a

scheduling or other pretrial order.'"  *Rice v. NBCUniversal Media, LLC*, 2019 WL 3000808, at

*3 (S.D.N.Y. July 10, 2019), *report and recommendation adopted*, 2019 WL 3752491 (S.D.N.Y.

Aug. 8, 2019) (citation omitted).  A court may also issue sanctions under Rule 37(b) for

discovery failures.  "The only predicates to the imposition of sanctions under Rule 37(b) are a

'court order directing compliance with discovery requests' and 'non-compliance with that

order.'"  *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2019 WL 4727537, at

*18 (S.D.N.Y. Sept. 26, 2019), *aff'd sub nom. Joint Stock Co. "Channel One Russia*

*Worldwide" v. Infomir LLC*, 2020 WL 1479018 (S.D.N.Y. Mar. 26, 2020) (quoting *Shanghai*

*Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017)).

"In deciding whether sanctions are merited under Rule 16(f) or 37(b)(2), the Court need

not find that the party acted in bad faith."  *Perez v. Edwards*, 2023 WL 2267376, at *3 (S.D.N.Y.

Feb. 28, 2023) (quoting *Shanchun Yu v. Diguojiaoyu, Inc.*, 2019 WL 6174204, at *3 (S.D.N.Y.

Nov. 20, 2019)).  "The Court need find only that there is clear and convincing evidence that

counsel disregarded a clear and unambiguous scheduling or other pretrial order."  *Id.* (quoting

*Diguojiaoyu, Inc.*, 2019 WL 6174204, at *3).

Finally, Rule 37(c) provides that if a party fails to provide information as required by

Rule 26(a) or (e), the Court may, on motion and after giving an opportunity to be heard, "order

payment of the reasonable expenses, including attorney's fees, caused by the failure."  Fed. R.

Civ. P. 37(c)(1).  "[I]t is generally appropriate, at a minimum, to require a party that has not

complied with its discovery obligations to pay the reasonable fees and costs incurred by the moving party in seeking disclosure and/or in seeking discovery sanctions." *Markey v. Lapolla Indus., Inc.*, 2017 WL 9512407, at *2 (E.D.N.Y. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 4271560 (E.D.N.Y. Sept. 26, 2017).   Rule 26(e) requires that "[a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission— . . .supplement or correct its disclosure or response: . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"  Fed. R. Civ. P. 26(e)(1)(a).  "Rule 37 is intended to encourage and enforce strict adherence to the 'responsibilities counsel owe to the Court and to their opponents.'"  *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 219 (S.D.N.Y. 2003), *adhered to on reconsideration*, 2004 WL 1943099 (S.D.N.Y. Aug. 27, 2004) (citation omitted).

The Court has little trouble finding that sanctions against Plaintiffs are warranted under these Rules.  Plaintiffs have repeatedly disregarded this Court's scheduling orders.  Despite assuring the Court and Defendant that it would produce all responsive documents to Defendant's document requests by the Court-ordered deadline of January 19, 2023, Plaintiffs produced no documents on that date.  Then, one day later, Defendant produced only a small number of responsive documents—specifically, 161 pages of document.  Dkt. No. 121-2.  That production did not include data from Diaz's iPhone, which Plaintiffs claimed would only take a few additional days to produce, Dkt. No. 121-3 at ECF p. 2, but had still not been produced by February 27, 2023, Dkt. No. 97.

Plaintiffs also acted in disregard of this Court's March 6, 2023 order as well as its March 24, 2023 order. Although the Court in its March 6 order ordered that Plaintiffs produce responsive documents by March 20, 2023, Plaintiffs did not do so, resulting in Defendant writing the Court in order to correct this deficiency. Dkt. No. 108. This Court then on March 24, 2023 imposed a deadline for production of all additional responsive documents by March 27, 2023. Dkt. No. 111. While Plaintiffs produced approximately 200 pages of documents within that deadline, Dkt. Nos. 121-7, 121-8, they waited until March 30, 2023, approximately three days *after* the deadline had passed, to produce 1,082 more pages of documents, many of which were from Diaz's custodial files, Dkt. No. 121-10.

Plaintiffs attempt to excuse these failures on various bases. First, Plaintiffs claim, regarding the January 19, 2023 deadline, that "Plaintiffs' inability to produce documents on that date was as a result of unexpected technical difficulties when collecting data from Plaintiff Diaz's phone." Dkt. No. 123 at 16. Even assuming that this is true, technical difficulties hardly constitute a valid excuse, here, where Plaintiffs waited until the last minute to begin collecting data from Diaz's cellphone despite having months to do so. Plaintiff's counsel had been retained in November of 2022 and Plaintiffs had been aware of their discovery obligations prior to that date. Plaintiffs therefore should have and could have made an attempt to begin imaging Diaz's cellphone significantly prior to January 19, 2023 in order to make sure that they could meet their discovery deadline, recognizing that technical difficulties are not uncommon. This is particularly true as both parties had represented to the Court on November 22, 2022 that they believed that outstanding discovery items would be completed by December 23, 2022. Dkt. No. 63. Yet, despite this fact, Plaintiffs' counsel's declaration indicates that the production vendor did not begin to run an image of Diaz's iPhone until two days prior to the January 19, 2023 deadline.

Dkt. No. 124 ¶ 8.  It is therefore hardly surprising and certainly not without fault, that Plaintiffs

were unable to meet their production deadline.  Moreover, even assuming that such technical

difficulties do excuse Plaintiff's failure to timely produce Diaz's phone data, they do not explain

why Plaintiff failed to produce *any* responsive documents on January 19, 2023, the actual

deadline.

Second, Plaintiffs claim that they were not aware of the March 20, 2023 deadline from

this Court's March 6 order and appear to fault Defendant for filing a letter with the Court about

Plaintiffs' failure to produce documents by that date without "first allowing Plaintiffs time to

cure any defects."  Dkt. No. 123 at 16.  The Court again is not persuaded.  The Court's March 6

order plainly stated that the "Court will extend the time for Plaintiffs generally to produce

responsive documents by two weeks from today in the event that further inquiry by Plaintiffs'

counsel leads it to conclude that there are additional responsive documents that have not been

produced."  Dkt. No. 105 at 11.  That order could not have been clearer.  Counsel was under a

continuing obligation to make sure that his clients' production was materially complete.  Fed. R.

Civ. P. 26(e)(1).  The March 6 order gave Plaintiffs an additional grace period of two weeks to

complete their production.  No further clarification should have been needed.  And if

clarification was wanted, it would have been incumbent on Plaintiffs to seek clarification from

the Court instead of exercising self-help and acting as if the Court's words were meaningless and

no deadline applied.  It also was not incumbent on Defendant's counsel—having been the victim

of Plaintiffs' repeated delays and having their own obligations to get this case ready for

dispositive motions and trial—to accord Plaintiffs a "grace" period.  Be that as it may, contrary

to Plaintiffs' contention, Defendant did first contact Plaintiffs about their failure to meet the

March 20, 2023 deadline prior to filing a letter with the Court.  On March 21, 2023, Defendant

conferred with Plaintiffs' counsel and Plaintiffs' counsel stated that he "could not commit to a date certain for when Plaintiffs will complete the required production and searches, but represented that he might be able to produce tomorrow, March 23, 2023—just one day before the expert disclosure deadline of March 24, 2023." Dkt. No. 108. With expert disclosures looming and Plaintiffs' refusal to promise documents in advance of that date, it was entirely appropriate for Plaintiff to write to the Court to ask the Court to set a firm deadline by which Plaintiffs had to produce their documents and to request an extension of its deadline to provide experts reports and disclosures. *Id.* Defense counsel would have been remiss if it had not done so.

In addition to Plaintiffs' repeated failures to comply with Court ordered deadlines, Plaintiffs have also failed to comply with their obligations under Federal Rule of Civil Procedure 26(e)(1)(a) to supplement or correct their prior discovery responses with additional responsive material. Most notably, Plaintiff Gardner-Alfred received a job offer on March 20, 2023, Dkt. No. 135-1; however, she did not disclose this offer to Defendant until April 29, 2023, Dkt. No. 135. This failure to timely provide this information also was prejudicial, as it was not provided until a week after the deadline for Defendant's rebuttal expert damages report and less than a week before the cutoff for expert depositions. *Id.*

Plaintiffs nonetheless argue that their failure to produce the offer letter at an earlier date is attributable to the fact that the job offer was contingent on Gardner-Alfred passing a background check and that their expert did not consider the offer letter to be relevant to her damages calculation. Dkt. No. 138 at 1–3. But, the fact that the offer was contingent on Plaintiff Gardner-Alfred passing a background check does not mean that it was not directly responsive to Defendant's document requests. Those requests called not only for evidence of current income but also "[a]ll documents reflecting any offers of employment or offers of any other work

opportunity, including contingent work, independent contractor work, temporary work, or a consulting position, that Plaintiff received from such prospective employers or others." Dkt. No. 139-1.  Furthermore, at her deposition, Plaintiffs' expert did state that an offer letter is a "piece of information that is relevant to consider certainly" and testified that she received the offer letter from Plaintiffs' counsel on either April 25 or 26th—*i.e.*, three days before Defendant's counsel.  Dkt. No. 139-2 at 4, 6.  Plaintiffs offer no explanation for why it took them an additional three days to produce this same information to Defendant.

Furthermore, in addition to Plaintiffs' past discovery failures, Plaintiffs continued to violate this Court's orders by refusing to produce the full contents of the vaccine exemption package Gardner-Alfred purchased and Diaz's records reflecting her electronic payment for it as well as the Electronic Notes and URL List.  As noted, the Court ordered Plaintiffs to produce this information as part of its March 6 order and then again in its March 24 order.

As to the vaccine exemption package Gardner-Alfred admitted to purchasing from Valentine, Gardner-Alfred originally only produced two pages of the package on September 30, 2022, specifically, a letter from Valentine regarding Gardner-Alfred and an affidavit signed by Plaintiff concerning her religious exemption.  Dkt. No. 121-14.  However, at her deposition on February 6, 2023, Plaintiff admitted that Valentine had provided her, in addition to these documents, other "informational stuff" including information related to "different laws and Title VII."  Dkt. No. 121-16 at 165, 166.  She stated that she had not provided those papers to her attorneys as she "didn't feel [she] needed to" and believed that "the two most important documents [were] the letter and the affidavit."  *Id.*  Although Defendant's counsel asked for the remaining documents that Gardner-Alfred had been provided by Valentine at that deposition,

Plaintiffs waited to produce additional pages from the exemption package until March 24, *after* this Court's March 6 and March 24 orders.  Dkt. Nos. 121-13, 121-14.

Even still, it appears that the additional pages that Plaintiffs produced on March 24, 2023 only represent a small fraction of the "informational stuff" that Valentine provided to Gardner-Alfred.  Defendant had an independent investigator purchase a vaccine exemption package from Valentine.  The four pages that Gardner-Alfred produced from her exemption package are essentially identical to those that the New York Fed's independent investigator received from Valentine.  Dkt. No. 121-15.  However, the independent investigator's package also contained many additional pages, including pages concerning various laws in addition to Title VII, pages titled the "Ecumenical Doctrine of Temple of the Healing Spirit," and a page titled "THE COVID-19 LIE."  *Id.*

Although Gardner-Alfred claims that she never received these additional pages, this claim is wholly implausible and Gardner-Alfred's testimony at the hearing on this point was not credible.  First, Gardner-Alfred and the New York Fed's independent investigator paid approximately the same sum for the package and, in a recorded phone call with Valentine, Valentine indicated to the independent investigator that the cost of the package had largely been unchanged since 1999.  Dkt. No. 121-17.  It is therefore highly likely that Gardner-Alfred would have received substantially the same package as the independent investigator.  Second, at the May 9 hearing, Gardner-Alfred offered no explanation as to why she would only have received the two informational pages concerning Title VII and the First Amendment, but not the remaining pages, including the pages concerning the doctrine of the Temple of the Healing Spirit itself.  She stated that Valentine had not offered her the pages concerning the Temple of the Healing Spirit as part of the vaccination exemption package and that she had never seen these

pages before, but that explanation makes no sense.  There is no logic to why she received the pages that she claimed she did.  If Valentine sent her, or if she requested, only selected pages that would be relevant to her accommodation request, there is no reason she would be sent pages regarding her purported rights under Title VII and not regarding the religious beliefs that would prevent her from taking the vaccine.  That she had never seen the Ecumenical Doctrine of Temple of the Healing Spirit also makes no sense given her claim to have been a member of the Temple for more than two decades.  Hearing Tr. 72–73.  Gardner-Alfred was persistently evasive during the hearing.  That testimony contradicted her deposition testimony.  Thus, her hearing testimony is entitled to no weight at all.

Finally, Plaintiff Gardner-Alfred has shown a repeated and flagrant disregard for her discovery obligations throughout the case.  At the outset of the case, she failed to produce any responsive documents and, with her deposition a day away, she produced only apparently transcribed and annotated excerpts of messages between her and a few other individuals.  After the numerous efforts by Defendant to obtain documents, she and her co-defendant produced only 161 pages of documents.  It was only as a result of Gardner-Alfred's deposition and the New York Fed's independent investigation that Defendant learned that Valentine advertises a vaccination exemption package, which Gardner-Alfred had paid for, and even then, she initially produced only two pages from the exemption package to Defendant, brazenly stating that she did not produce the remainder because she did not deem the pages important and, in effect, did not want to produce them.  Dkt. No. 97 at 2.  It is clear that if Gardner-Alfred felt free to disregard Defendant's discovery requests and the Court's orders in the past and to withhold relevant information based on her own statement that she did not believe the documents to be important, she would feel no compunction in doing so on a going forward basis.

That conclusion is only reinforced by what the Court concludes is her false testimony with respect to the payment records.  Production of the payment records were specifically called for by the Court's orders.  During her deposition, before the Court specifically ordered the production of those records and before a motive to fabricate arose, the following colloquy occurred:

Q:  Sitting here today, you have no idea how much you gave?

A:  I do not.

Q:  How did you pay him?

A:  I believe it was through Zelle—not Zelle.  I don't know.  Zelle or Cash App.  I can't remember.

Q:  We'll follow up with your counsel.  But we demand that we get those records.

MR. BELESTRIERE:  Again, I'll take it under advisement.   Please put it in writing.

Dkt. No. 121-16 at ECF p. 4.

After Defendant put the request in writing, Plaintiffs never once altered that story.  For example, on March 26, 2023, Defendant wrote to Plaintiffs questioning why it still had not received evidence of Gardner-Alfred's payment for the exemption package, stating "[i]t is also not possible that Ms. Gardner paid Valentine through 'Zelle or Cash App'—in her own words—but does not have a record to produce."  Dkt. No. 124-11 at 15.  Plaintiffs merely responded: "With regards to Ms. Gardner, she believes she made a donation to Mr. Valentine but does not have a receipt."  *Id.* at 16.  Plaintiffs never mentioned anything about the payment being made via cash.  Payment by Zelle or Cash App is also consistent with the method by which Valentine asked Defendant's independent investigator to pay.

At the hearing, Gardner-Alfred offered an entirely new, and incredible, story for why she did not produce the payment records.  For the first time, Gardner-Alfred claimed she paid for the

exemption in cash, not Zelle or Cash App.  At the May 9 hearing, Gardner-Alfred testified to the

following:

> Q: Why haven't you produced Zelle or Cash App records in this case?
>
> A: Because at the time that you asked me how I paid, it was—it was all a blur.  I mean, I just didn't remember at the time, but I did note to you that I know I made a donation to reverend [Valentine] and so I don't have the record, I couldn't—I didn't find it, so I paid him.
>
> Q:  So is it your testimony today that you did not pay him any amounts in Zelle or Cash App?
>
> A: Correct.

Hearing Tr. 57.  Gardner-Alfred thus would have this Court believe that she had simply

mistakenly represented that she had paid for the package via Zelle or Cash App at her deposition

and, months later and only after the motion for sanctions was filed, remembered that she paid via

cash (and thus would have no records of the payment).  The Court, for obvious reasons, declines

to believe this self-serving testimony, particularly as Plaintiffs had months after this Court's

March 6 order directing production of such records to correct the record on this point.

But, the timing of Gardner-Alfred's claim is not the only reason why the Court finds

Gardner-Alfred's testimony as to her lack of payment records unbelievable.  During the May 9

hearing, Gardner-Alfred's account of how she had paid for the package in cash sounded as

though it was made up on the spot.  When asked to whom she had handed the approximately

$500 in cash, Gardner-Alfred stated that it was "an affiliate of" Valentine's but she could

remember no other details about the person.  *Id.* at 64–65.  She also noted that she had never met

the person before and had not been sent a picture of the person prior.  *Id.* at 66.  Defendant's

counsel then asked numerous questions about where the payment took place, to which Plaintiff

originally stated, "I think it was Brooklyn" and claimed it was on a street but did not remember if

it was in a park, and then later specified that it was "near Fulton street in Brooklyn."  *Id.*  In other

words, according to Gardner-Alfred, she paid for her exemption package by handing approximately $500 in cash to a stranger on a random street in Brooklyn whom she had never met or seen a picture of.  This story defies common sense.

In light of these facts, the only conclusion that this Court can reach is that Gardner-Alfred withheld relevant documents and continues to withhold such documents because they are damaging to her claim.  To make out a prima facie case of religious discrimination, Gardner-Alfred has to show, among other things, that she held a bona fide religious belief that conflicted with an employment requirement.  *See Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006).  Accordingly, one of the most important issues in the case is whether Gardner-Alfred's religious beliefs were sincerely held.  Dkt. No. 105 at 6.  It is a point as to which the parties have joined issue.  Evidence concerning the vaccine exemption package—particularly evidence that Gardner-Alfred ordered and received the exact same package in the exact same way as Defendant's independent investigator—would clearly negate that Plaintiff's religious beliefs were sincerely held.  Instead, it would tend to support that Gardner-Alfred's claimed religious views concerning the Temple were contrived and bought and paid for in order to avoid the vaccination requirement of Defendant.

The same is true for Diaz's Electronic Notes about the case and her URL List.  As to the list of URLs, Diaz plainly testified at her deposition that this list existed and had been provided to counsel[8]:

Q:  Did you send your counsel a list of the URLs that you visited after Googling COVID-19 virus?

A:  Yes.

Q:  You sent them a list of URLs?

---

[8] It is unclear whether Diaz was referring to her current counsel or her prior counsel.

A:  Yes.

Q:  And has that been turned over to us, to your knowledge?

A: I don't know.

Q: How many URLs were on that list?

A: I can't remember.

Q:  Was it more than five?

A:  No.

Diaz Dep. Tr. 100–101.  She similarly testified to taking and maintaining notes about the case on her phone.

Q:  You don't take notes about this case?

A:  I do.

Q:  Do you take them electronically?

A: Yes.

Q: Are they saved on your computer?

A: No.

Q: Where are they saved?

A: On my phone.

Q:  They're saved on your phone.  And they should be backed up on your computer, right?

A: I believe so.

*Id.* at 366–67.  However, as of today, and despite this Court's orders, neither the URL List nor the Electronic Notes have been produced to Defendant.  These documents are also highly relevant to the claims in this case.  The Electronic Notes have the potential to reflect on the merits of any part of Plaintiffs' claims, and the URL List has the potential to evince Diaz's true

concerns about Covid-19 and the vaccine and whether they were or were not rooted in sincere religious beliefs.  This evidence thus must be produced whether good or bad for Plaintiffs' case.

While Diaz offered excuses during the Court's May 9, 2023 hearing for why these documents were not produced, these excuses lacked any credibility whatsoever.  As to the URL List, she stated that it did not exist and that she had mistakenly believed that this list existed at her deposition because she did not realize she was being asked about a list of links related to the Covid-19 virus but instead believed she was being ask about her "religious exemption from the Colorado website."  Hearing Tr. 9.  This explanation is unbelievable.  A review of Diaz's deposition testimony reveals that she was clearly asked about links related to the Covid-19 virus and she answered unmistakably not only that she had this list, but that she had turned the list over to counsel.  Diaz then continued to answer questions at her deposition about that list and the number of links that would be on it.

As to the Electronic Notes, Diaz claimed for the first time during the May 9 hearing that she searched for such notes and they did not exist.  She stated at the hearing that she never took notes regarding the litigation.  *Id.* at 10.  However, this testimony at the hearing is not only inconsistent with her prior deposition testimony,[9] but also with Plaintiffs' counsel's representations to Defendant after the deposition.  On March 29, 2023, Plaintiffs' counsel emailed Defendant stating: "Without waiving privilege after discussion with my client [Diaz] indicated that [] in communications with former counsel she believes she had emailed certain notes that she had.  We do not have a record of her communications with former counsel."  Dkt. No. 124-11 at 7.  In other words, Plaintiffs' counsel confirmed the existence of such notes even

---

[9] Plaintiff was also unable to explain at the hearing why she had previously testified that the Electronic Notes did exist at her deposition.  She merely stated, "I'm not sure why I testified that" and "I'm not sure what I was thinking of."  Hearing Tr. 18–19.

after the deposition.  Thus, the only conclusion that this Court can reasonably draw is that

Plaintiffs' about-face at the May 9 hearing—that the notes do not exist—was concocted in an

attempt to both avoid sanctions and avoid producing these notes to opposing counsel.  This is

flatly inconsistent with Plaintiffs' discovery obligation and clearly sanctionable.

      The evidence at the hearing also demonstrated that Diaz cannot be trusted with respect to

discovery.  The evidence demonstrated that she has made repeated misrepresentations.  For

example, in her deposition, Diaz testified that she did not have any text messages with John

Gouker, the father of her child, relating to Covid-19 or the Covid-19 vaccines.  Diaz Dep. Tr.

422–23.  However, during discovery, Plaintiffs produced a WhatsApp message between Gouker

and Diaz concerning the Covid-19 vaccine.  May 9, 2023 Hearing, Ex. 3.  Similarly, Diaz

testified in her deposition that she could not remember whether she had read about the Covid-19

vaccine, Diaz Dep. Tr. 422–23, but documents produced during discovery indicate that she

received numerous email messages about the Covid-19 vaccine and communicated with others

about it.

      In her deposition, Diaz testified that she had never used WhatsApp to discuss Covid-19

or Covid-19 vaccines.  Hearing Tr. 23.  However, during the May 9 hearing, she was then

confronted with a January 18, 2022 WhatsApp message between herself and someone named

Teresa Ortiz, whom she identified as her babysitter.  May 9, 2023 Hearing, Ex. 2.  The message

plainly shows that Diaz sent to Ortiz an image of a vaccination record card with Ortiz's name on

it.  According to Diaz, Ortiz needed the card to enter the Dominican Republic.  Hearing Tr. 24.

An image of the vaccination record card is reproduced below:

The lot number for the second dose on the card apparently is not a valid number for a Pfizer vaccine; it appears the card was counterfeit although Diaz disclaimed knowledge of that fact. *Id.* at 25.

Yet, Diaz's history of untruths does not stop there.  Despite the fact that the WhatsApp message plainly shows that Diaz sent this image to Ortiz, Diaz repeatedly claimed at the May 9 hearing that Ortiz had sent her the image of the vaccination card—as if to suggest that she had not also sent Ortiz the image of the card.  *Id.* at 24.  Her testimony that Ortiz sent her the card electronically for Diaz to upload it electronically is also preposterous—Diaz failed to explain why, if Ortiz had an electronic version of the card to send to Diaz, she would need Diaz to send it to her electronically.  Whether she knew it was fake or not, Diaz sent Ortiz a fake Covid vaccination card.

For these reasons, the Court concludes that sanctions are warranted pursuant to Rule 16(f), Rule 37(b), and Rule 37(c).  In doing so, the Court notes that, even though bad faith or willfulness is not required for sanctions under each of these rules, *see NBCUniversal Media,*

*LLC*, 2019 WL 3000808, at *3; *Metro. Opera Ass'n, Inc.*, 212 F.R.D. at 219 ("Rule 37 authorizes imposition of sanctions for negligence or tactical intransigence as well as willful or intentional wrongs."), the evidence here supports and the Court finds that Plaintiffs' conduct was willful and carried out in bad faith.  As outlined, Plaintiffs have repeatedly disregarded this Court's orders and, even today, continue to disregard them by misrepresenting that certain documents never existed despite significant evidence to the contrary.  Plaintiffs have also failed to timely update their disclosures with relevant information until the last minute, prejudicing Defendant's ability to litigate this case.  The inference is inescapable—Plaintiffs did not turn over documents that they knew they had because they did not want to and understood doing so would hurt their case.

## II.    Sanctions Pursuant to Rule 26(g)

Defendant further argues that sanctions against Plaintiffs and Plaintiffs' counsel are appropriate under Rule 26(g) for failure to make a reasonable inquiry that their discovery responses were consistent with the Federal Rules of Civil Procedure.  Rule 26(g) requires the attorney or party producing documents to certify that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the discovery response is "complete and correct as of the time it is made."  Fed. R. Civ. P. 26(g)(1)(A).  The rule carries with it the obligation on the responding party's counsel to "monitor compliance so that all sources of discoverable information are identified and searched."  *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prod., Inc.*, 2020 WL 7342724, at *13 (S.D.N.Y. Dec. 11, 2020) (quoting *Ryan v. Rock Grp., NY. Corp.*, 2019 WL 6841874, at *4 (S.D.N.Y. Dec. 16, 2019)); *see Gardner-Alfred v. Federal Reserve Bank of N.Y.*, 2023 WL 2366916, at *4 (S.D.N.Y. Mar. 6, 2023).  Rule 26(g)(3), in turn, provides that:

> If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3).

Here, sanctions are appropriate under this Rule.  Plaintiffs' counsel's responses to Defendants' discovery requests "—particularly counsel's repeated representations that all responsive documents had been produced—were made without any real reflection or concern for their obligations under the rules governing discovery and, in the absence of an adequate search for responsive documents, without a reasonable basis." *Metro. Opera Ass'n, Inc.*, 212 F.R.D. at 221–22.  Despite representing to the Court and to opposing counsel that its January 19, 2023 production would include "all responsive files," with the exception of documents from Diaz's cellphone, Dkt. No. 121-3 at ECF p. 8, Plaintiffs' production on January 20 consisted merely of 161 pages of documents, with a privilege log identifying one withheld document, Dkt. No. 121-2.  That this production did not include anywhere near *all responsive* documents is evidenced by the fact that, since that date, Plaintiffs have made several subsequent productions totaling approximately 2,000 documents.  Dkt. No. 121-10.

Plaintiffs' counsel blames their plainly inadequate January 20, 2023 production on Defendant.  They state that they repeatedly attempted to negotiate search terms with the New York Fed before running searches, but that the New York Fed requested that Plaintiffs run search terms on its own determination.  Dkt. No. 123 at 18–19.  While it is true that parties are generally encouraged to meet and confer on the appropriate search terms to employ for ESI discovery, *see e.g.*, *Elhannon LLC v. F.A. Bartlett Tree Expert Co.*, 2017 WL 1382024, at *9 (D. Vt. Apr. 18, 2017); *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("Of course, the best solution in the entire area of electronic discovery is

cooperation among counsel."), the producing party, even absent agreement or discussion about the appropriate terms, still has an independent obligation to craft search terms to fulfill the requirements of Rules 26 and 34, *see Raine Grp. LLC v. Reign Cap., LLC*, 2022 WL 538336, at *1 (S.D.N.Y. Feb. 22, 2022).  Under Rules 26 and 34 "parties [must] conduct a reasonable search for documents that are relevant to the claims and defenses" and parties "have an affirmative obligation to search for documents which they may use to support their claims or defenses, unless the use would be solely for impeachment."  *Id.*  And, although courts are generally loath to second guess search terms, *see Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. at 135, there is little question that Plaintiffs' search terms were not reasonably calculated to lead to production of documents relevant to their claims or Defendant's defenses.  Defendant's document requests called for "[a]ll documents and communications . . . between or including any Plaintiff and any person . . . regarding Covid-19, Covid-19 vaccines, the New York Fed's response to the Covid-19 pandemic, the Vaccination Policy, Plaintiffs' accommodation requests from the Vaccination Policy, Plaintiffs' submissions in this action in New York State Supreme Court prior to its removal to this Court, any claims asserted in this action, or the factual allegations underlying any such claims."  Dkt. Nos. 97-1, 97-2.  Notably, prior to applying any search terms, Plaintiffs only searched Gardner-Alfred's and Diaz's emails between one another and with five other individuals.  Dkt. No. 121-4.  In other words, any emails of Diaz and Gardner-Alfred, even if highly relevant, would not have been identified unless they were with one of these limited number of individuals.  Plaintiffs offer no justification for narrowing the emails searched in this matter.  Plaintiffs also applied extremely narrow search terms to these emails.  For example, despite the Document Requests asking for all documents concerning Covid-19, documents with the terms "covid" or "covid-19" or "coronavirus" were only searched

and produced if one of those words was within ten words of either "immune!" or "natural" or "CDC." *Id.*

In addition to its inadequate January 20 production, Plaintiffs have also inappropriately withheld documents on the basis of privilege, even where no privilege plainly applies, and failed to produce relevant documents, despite claiming that all relevant documents had been produced, on the basis that they were irrelevant or had been inadvertently missed.

Plaintiffs' counsel repeatedly indicated that he had reviewed all documents that hit on certain updated search terms and produced all responsive documents. Dkt. No. 124-11 at 7, 16. And, Defendant, in response, repeatedly attempted to confirm this was true. For example, on March 26, 2023, the New York Fed reached out to Plaintiffs about why they had produced such a small number of documents, noting that their document requests had specifically requested any documents and communications regarding Covid-19 and that "[a]ny email to or from either Plaintiff that hit on the New York Fed's search terms are plainly responsive and should have been produced." *Id.* In response, Plaintiffs' counsel confirmed that all responsive documents had been produced. However, despite that fact, on March 30, 2023, only a few days later, Plaintiffs produced an additional 1,082 more pages of documents, merely explaining that they "inadvertently were not set aside for production." Dkt. No. 121-9. In addition, on April 6, 2023, Plaintiffs provided Defendant with a sample of "irrelevant documents containing search terms," many of which were, in fact, directly relevant to Defendant's defense. Dkt. No. 123 at 3.

## III.   Imposition of Sanctions

"The determination of an appropriate sanction . . . is confined to the sound discretion of the trial court, and is assessed on a case-by-case basis." *King v. Wang*, 2021 WL 5495799, at *1 (S.D.N.Y. Nov. 23, 2021) (quoting *Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 46 (S.D.N.Y. 2014)). "Nevertheless, a court should 'impose the least harsh sanction that can provide an

adequate remedy.'" *Id.* (quoting *Mphasis Corp.*, 302 F.R.D. at 46). "A court considers several factors when deciding whether to exercise its broad discretion to order sanctions, including '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of his non-compliance." *Id.* (quoting *Mphasis Corp.*, 302 F.R.D. at 46).

Based on the facts at hand, Defendant is entitled to reasonable expenses and attorneys' fees incurred in connection with (1) the present motion, (2) call and email correspondence with opposing counsel from March 21 to the present date regarding Plaintiffs' discovery deficiencies; as well as (3) expenses incurred in connection with their February 27 motion to compel.[10]  There is little question here that Plaintiffs' repeated failures to comply with Court orders and their discovery obligations have resulted in a waste of Court time and resources as well as Defendant's time and resources.  Such conduct justifies an award of attorneys' fees and expenses against Plaintiffs and Plaintiffs' attorneys, jointly and severally.  "Courts in this circuit have often awarded attorneys' fees to sanction a party who disregards her discovery obligations." *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 321 (S.D.N.Y. 2008) (collecting cases); *Infomir LLC*, 2019 WL 4727537, at *28 ("Monetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled.").  "Moreover, where, as here, the sanctionable conduct is a 'coordinated effort' of counsel and party, joint and several liability is appropriate." *Metro. Opera Ass'n, Inc.*, 2004 WL 1943099, at *25; *see Kosher Sports, Inc. v. Queens Ballpark Co., LLC*, 2011 WL 3471508, at

---

[10] The Court does not award expenses and attorneys' fees incurred in connection with Plaintiffs' February 23 motion to compel depositions.  Although the Court denied the motion, Dkt. No. 105, reasonable expenses are not warranted under Federal Rule of Civil Procedure 37(a)(5)(B).

*15 (E.D.N.Y. Aug. 5, 2011) ("Plaintiff and plaintiff's counsel will bear joint responsibility for defendant's reasonable expenses" under Rules 37 and 26(g)).  Attorneys' fees against Plaintiffs and their counsel are awardable under a combination of Rule 16(f), Rule 37, and Rule 26.  *See Am. Exch. Time LLC v. Tissot S.A.*, 2022 WL 17414348, at *3 (S.D.N.Y. Dec. 5, 2022) (Rule 16(f)); *Tse*, 568 F. Supp. 2d at 321 (Rule 37(c)); *Infomir LLC*, 2019 WL 4727537, at *2 (Rule 37(b)); *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, 331 F.R.D. 568, 571 (S.D.N.Y. 2019) (Rule 26).  Under Rule 26(g), Plaintiffs' counsel—without offset to Plaintiffs—shall be solely liable to pay the portion of those reasonable expenses and attorneys' fees that were incurred concerning (i) the communications involving Plaintiffs' non-attorney friends that Plaintiffs withheld on the basis of privilege but that were later produced; (ii) emails that Plaintiffs claimed were not relevant (*i.e.*, the "spam" emails) but were later produced; and (iii) communications with Defendant's counsel regarding Plaintiffs' search terms and search repositories.

Under Rule 37(b), "'[i]f monetary sanctions are not sufficient, more stringent orders may be issued,' including preclusion orders, adverse inference orders, and orders deeming disputed facts determined adversely to the disobedient party."  *Infomir LLC*, 2019 WL 4727537, at *28 (citation omitted).  In addition to attorneys' fees, Defendant also seeks an order directing that it be taken as established that Plaintiffs wrongfully withheld files relevant to their reasons for opposing the Covid-19 vaccines as well as adverse inferences relating to the documents Plaintiffs continue to withhold, specifically, that (i) the documents withheld by Gardner-Alfred regarding the contents of her vaccination exemption package and her payment to the "Reverend Dr." Valentine would show she purchased the same vaccination exemption package, in the same way and for the same amount, as the New York Fed's independent investigator, and (ii) withheld

documents from Plaintiffs' custodial files, including emails,[11] the Electronics Notes, and the URL List, would have contained additional non-religious and anti-vaccination views.

"A court may grant an adverse inference instruction as a sanction for the non-production of evidence, upon a showing '(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is "relevant" to the . . . claim or defense [of the other party] such that a reasonable trier of fact could find that it would support that claim or defense.'" *DeCastro v. Kavadia*, 309 F.R.D. 167, 181 (S.D.N.Y. 2015) (quoting *Residential Funding v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)). "The party seeking sanctions bears the burden of establishing all elements of a claim for spoliation of evidence." *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008). "As for the nature of the instruction, a court may simply tell the jury that the evidence was destroyed or wrongfully withheld, or it may add that the jury could, but need not, draw inferences against the sanctioned party based on those facts, or it may instruct the jury that it should draw an adverse inference based on the facts." *Scantibodies Lab'y, Inc. v. Church & Dwight Co.*, 2016 WL 11271874, at *35 (S.D.N.Y. Nov. 4, 2016), *report and recommendation adopted*, 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017) (cleaned up).

Based on this Court's review of the relevant evidence, including Plaintiffs' testimony, the Court finds that these criteria support the imposition of an adverse inference instruction with respect to the vaccination exemption package, the Electronic Notes, and the URL List. Plaintiffs clearly had an obligation to preserve and provide these documents and, as discussed *supra*

---

[11] These emails have since between produced and thus, absent a separate request from Defendant, the Court denies Defendant's request for any adverse inference with respect to them.

Section I, the evidence supports that, at some point during the course of the litigation, Gardner-Alfred possessed the complete vaccination exemption package and payment details related to that package, and Diaz possessed the Electronic Notes and the URL List.  This evidence is also plainly relevant to Plaintiffs' claims and Defendant's defense, as it goes to whether or not Plaintiffs' refusal to get vaccinated was connected to a bona fide religious belief or something else.  *See* Dkt. No. 105 at 6 (discussing relevance of exemption package).  Plaintiffs' failure to produce such evidence also was culpable.  Although culpability may be demonstrated through evidence of mere negligence, *see Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 254 (S.D.N.Y. 2012), Plaintiffs repeated refusals to produce this information demonstrate more than simple negligence, but instead intentional bad faith, *see PSG Poker, LLC v. DeRosa–Grund*, 2008 WL 190055, at *12 (S.D.N.Y. Jan. 22, 2008) ("[Defendant's] repeated failure to either produce relevant documents or a credible story regarding their whereabouts—despite the admonitions of this Court and repeated requests from the plaintiffs—can only be interpreted as an intentional and willful act.").  As noted, *supra* Section I, despite her testifying to possessing both pieces of information at her deposition, Diaz, without plausible explanation, now claims to have never had either the Electronic Notes or the URL List.  Gardner-Alfred's testimony as to why she did not have the full vaccine exemption package and did not have electronic records of payment for such a package was similarly implausible.  The Court thus is unable to conclude anything other than that both Plaintiffs have decided to intentionally withhold and/or destroy this information to avoid production.  No less stringent sanctions would be sufficient either to cure the prejudice to Defendant or to satisfy the deterrent value of sanctions.  Plaintiffs have shown a persistent disregard of their obligations and of the Court's orders in the past.  There is no reason to believe that they would satisfy any court order in the future.

Adverse inference instructions are therefore warranted.  Specifically, Defendant is entitled to adverse inference instructions that (1) Gardner Alfred has withheld documents regarding her vaccination exemption package; (2) Diaz has withheld the Electronic Notes and URL List; and (3) the documents withheld by Gardner-Alfred regarding the contents of her vaccination exemption package and her payment to the "Reverend Dr." Valentine would show she purchased the same vaccination exemption package, in the same way and for the same amount, as the New York Fed's independent investigator.  With respect to the second instruction concerning the Electronic Notes and the URL List, the Court declines to instruct the jury that it should draw any particular inference based on the fact that Diaz has not produced this material.  "Most typically, it seems that courts in this circuit have not gone so far as to direct that a jury should draw a certain inference from a party's spoliation or withholding of evidence, instead opting to allow the jury to draw such inferences as it sees fit, from the facts presented."  *Id.*; *see Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 110 (2d Cir. 2001) ("[A] party seeking an adverse inference may rely on circumstantial evidence to suggest the contents of destroyed evidence.  It then becomes a matter for the jury to decide, based on the strength of the evidence presented, whether the documents likely had such content.").  Here, too, the jury can determine what inference to draw from the fact that Diaz has chosen to withhold these documents.

## CONCLUSION

The motion for sanctions is GRANTED IN PART and DENIED IN PART.  Defendant is directed to file a fee application consistent with this opinion by June 20, 2023.  Plaintiffs may respond to that application by July 4, 2023 and Defendant may file a reply by July 11, 2023.

The Clerk of Court is respectfully directed to close Dkt. No. 119.


SO ORDERED.

Dated: May 17, 2023
      New York, New York

                                       LEWIS J. LIMAN
                          United States District Judge