UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LORI GARDNER-ALFRED and JEANETTE DIAZ,          :
                                                :
                                                :
                            Plaintiffs,         :
                                                :          Civ No.: 22-cv-1585 (LJL)
            -against-                           :
                                                :
FEDERAL RESERVE BANK OF NEW YORK,               :
                                                :
                                                :
                            Defendant.          :
------------------------------------------------------------------------X


**DEFENDANT FEDERAL RESERVE BANK OF NEW YORK'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................. ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF UNDISPUTED FACTS ............................................................................... 3

I.      Covid-19 Vaccination Safeguarded the New York Fed's Workforce and Mission.............. 3

II.     Plaintiffs Sought Religious Accommodations Despite
        Having No Religious Objections To Covid-19 Vaccination ................................................. 4

        A.      Plaintiff Gardner-Alfred................................................................................... 4

        B.      Plaintiff Diaz.................................................................................................... 7

III.    The New York Fed Evaluated And Denied Plaintiffs' Requested Accommodations ......... 11

ARGUMENT ........................................................................................................................ 13

I.      Summary Judgment Standard ........................................................................................ 13

II.     Summary Judgment Should Be Granted On All Claims Because Plaintiffs Cannot Show
        That They Had Sincerely Held Religious Beliefs That Precluded Covid-19 Vaccination .. 14

        A.      No Reasonable Juror Could Conclude Plaintiffs' Purported
                Religious Objections to Covid-19 Vaccination Are Sincere ............................... 14

                1.      Plaintiff Gardner-Alfred............................................................... 15
                2.      Plaintiff Diaz................................................................................ 17

        B.      Plaintiffs Cannot Demonstrate a Substantial Burden or Conflict ........................ 19

III.    Plaintiffs' RFRA Claims Fail For The Additional Reason That
        There Was No Adequate Substitute For Covid-19 Vaccination......................................... 22

        A.      The Vaccination Policy Furthered Compelling Interests..................................... 22

        B.      Requiring Plaintiffs' Vaccination Was the Least Restrictive Means of Furthering
                the New York Fed's Compelling Interests........................................................... 23

                1.      Plaintiffs' Vaccination Furthered the New York Fed's
                        Interests and There Was No Adequate Substitute........................... 24
                2.      Plaintiffs' Suggested Alternatives Would Not Have
                        Adequately Furthered the New York Fed's Compelling Interests.............. 25

IV.     Plaintiffs' First Amendment Claims Fail as a Matter of Law Because the
        Vaccination Policy was Neutral, Generally Applicable, and Had a Rational Basis ........... 28

V.      Plaintiffs' Title VII Claims Fail for the Independent Reason
        That an Accommodation Would Have Caused Undue Hardship ........................................ 31

VI.     Gardner-Alfred's Claims Fail Under the
        Doctrines of Fraud on the Court and Unclean Hands........................................................ 32

CONCLUSION...................................................................................................................... 35

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456 (2d Cir. 2001) ........................................ 14

*Abordo v. State of Hawaii*, 938 F. Supp. 656 (D. Haw. 1996) ................................................. 27

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................ 13

*Bailey v. Associated Press*, No. 01 Civ. 4562,
2003 WL 22232967 (S.D.N.Y. Sept. 29, 2003) ................................................................... 14, 19

*Baker v. Home Depot*, 445 F.3d 541 (2d Cir. 2006) ............................................................... 16-17, 19

*Ball v. Marriott Int'l, Inc.*, 19-cv-10593, 2022 WL 4133207
(S.D.N.Y. Sept. 12, 2022) ..................................................................................................... 13, 14

*Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334 (S.D.N.Y. 2005) ..................... 13-14

*Bob v. Madison Security Group, Inc.*, 14 Civ. 9727, 2016 WL 6952259
(S.D.N.Y. Nov. 28, 2016) ................................................................................................ *passim*

*Bowles v. New York City Transit Auth.*, 285 F. App'x 812 (2d Cir. 2008) ............................... 30

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) ..................................................... 14, 16

*Catholic Health Care Sys. v. Burwell*, 796 F.3d 207, 218 (2d Cir. 2015),
*judgment vacated on other grounds by* 578 U.S. 993 (2016) ............................................... 20-21

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ....................................................................... 19

*Collins v. City Univ. of New York*, No. 21 CIV. 9544,
2023 W51818547 (S.D.N.Y. Feb. 8, 2023) ....................................................................... 29, 30

*D'Amico v. City of New York*, 132 F.3d 145 (2d Cir. 1998) ..................................................... 14

*D'Cunha v. Northwell Health Sys.*, No. 1:22-CV-0988,
2023 WL 2266520 (S.D.N.Y. Feb. 28, 2023) ..................................................................... 31

*Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929,
2023 WL 3467143 (S.D.N.Y. May 15, 2023) ..................................................................... 31

*Does 1-2 v. Hochul*, No. 21-CV-5067,
2022 WL 4637843 (E.D.N.Y. Sept. 30, 2022) ................................................................... 29

*Donlon v. City of Hornell*, No. 23-CV-6096,
  2023 WL 2236490 (W.D.N.Y. Feb. 27, 2023) ................................................... 28-29

*Est. of Thomas v. Fayette Cnty.*, 194 F. Supp. 3d 358 (W.D. Pa. 2016).................................. 24

*Ferrelli v. Unified Court Sys.*, 1:22 CV 0068,
  2022 WL 673863 (N.D.N.Y. Mar. 7, 2022) ................................................... 19, 29

*Garcia v. Griffin*, No. 16-cv-2584, 2021 WL 1577679 (S.D.N.Y. Apr. 22, 2021) .................. 32

*Goldstein v. Delgratia Min. Corp.*, 176 F.R.D. 454 (S.D.N.Y. 1997)..................................... 32

*Hamilton v. Schriro*, 74 F.3d 1545 (8th Cir.1996)..................................................... 22

*Hussein v. Waldorf Astoria*, 134 F. Supp. 2d 591 (S.D.N.Y. 2001),
  *aff'd*, 31 F. App'x 740 (2d Cir. 2002)..................................................... 17, 19

*In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*,
  No. CV 13-4521 (FLW), 2017 WL 3531684 (D.N.J. Aug. 17, 2017) ............................... 24

*Joseph v. Beccera*, 22-cv-40, 2022 WL 17262231 (W.D. Wisc. Nov. 29, 2022) .................... 26

*Kalsi v. New York City Transit Auth.*, 62 F. Supp. 2d 745 (E.D.N.Y. 1998),
  *aff'd*, 189 F.3d 461 (2d Cir. 1999)..................................................... 31

*Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021) ..................................................... 28, 30

*Kane v. De Blasio*, 575 F. Supp.3d 435 (S.D.N.Y. 2021),
  *aff'd sub nom. Keil v. City of New York*, 2022 WL 619694 (2d Cir. Mar. 3, 2022)............. 14, 19

*Knick v. Austin*, No. CV 22-1267,
  2022 WL 2157066 (D.D.C. June 15, 2022)..................................................... 28

*Lawrence v. City of New York*, No. 15-cv-8947,
  2018 WL 3611963 (S.D.N.Y. July 27, 2018) ..................................................... 33

*Little Sisters of the Poor Home for the Aged, Denver, Colo. v. Burwell*,
  794 F.3d 1151 (10th Cir. 2015), *vacated and remanded on other grounds*
  *sub nom. Zubik v. Burwell*, 578 U.S. 403 (2016)..................................................... 20

*Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011)..................................................... 21

*Marte v. Montefiore Med. Ctr.*, No. 22-CV-03491-CM,
  2022 WL 7059182 (S.D.N.Y. Oct. 12, 2022) ..................................................... 31

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440 (S.D.N.Y. 2002) ......... 32

*Nat'l Cap. Presbytery v. Mayorkas*, 567 F. Supp. 3d 230 (D.D.C. 2021) ................................ 22

*New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*,
    432 F. App'x 25 (2d Cir. 2011) ................................................................... 32

*Pollard v. U.S. Parole Comm'n*, 15-cv-9131,
    2016 WL 4290607 (S.D.N.Y. Aug. 11, 2016) ...................................... 21

*Powers v. Washington Dept. of Corr.*, No. C11-5806,
    2013 WL 1755790 (W.D. Wash. Mar. 29, 2013),
    *report & recommendation adopted*, 2013 WL 1755790 ....................................... 22

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020).......................................... 23

*Roth v. Austin*, 603 F. Supp.3d 741 (D. Neb. 2022) ................................................................ *passim*

*S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020)................................... 35

*Sabir v. Williams*, 52 F.4ᵗʰ 51 (2d Cir. 2022)........................................................................... 24

*Shahid-Ikhlas* v. *New York & Presbyterian Hosp., Inc.*, No. 22-cv-10643,
    2023 WL 3628151 (S.D.N.Y. May 5, 2023),
    *report and recommendation adopted*, 2023 WL 3626435 (S.D.N.Y. May 24, 2023).......... 31

*Shangold v. Walt Disney Co.*, 275 F. App'x 72 (2d Cir. 2008) ................................................. 32

*Sherr v. Northport-East Northport Union Free Sch. Dist.*,
    672 F. Supp. 81 (E.D.N.Y. 1987) ........................................................ 16, 17

*Short v. Berger*, 593 F. Supp. 3d 944 (C.D. Cal. 2022),
    *appeal dismissed*, No. 22-55339, 2022 WL 2421096 (9th Cir. May 17, 2022) .................. 27-28

*Short v. Berger*, 599 F. Supp. 3d 844, 862 (D. Ariz. 2022)*,*
    *opinion vacated, appeal dismissed as moot,* No. 22-15755,
    2023 WL 2258384 (9th Cir. Feb. 24, 2023) ......................................... 26

*Shrum v. City of Coweta, Okla.*, 449 F.3d 1132 (10th Cir. 2006) ............................................ 29, 30

*Skywark v. Isaacson*, No. 96 civ. 2815, 2000 WL 145465 (S.D.N.Y. Feb. 9, 2000) ............... 35

*Skoros v. City of New York*, 437 F.3d 1 (2d Cir. 2006) ............................................................ 22-23

*Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*, 742 F.3d 37 (2d Cir. 2014)................................ 23

*Summers v. Whitis*, No. 4:15-cv-00093,
   2016 WL 7242483 (S.D. Ind. Dec. 15, 2016).......................................................... 21

*United States ex. rel. Kraus v. Wells Fargo & Co.*, 943 F.3d 588 (2d Cir. 2019).................... 27

*United States v. Christie*, 825 F.3d 1048 (9th Cir. 2016) .......................................... 23

*United States v. Friday*, 525 F.3d 938 (10th Cir. 2008) ........................................... 22

*United States v. Manneh*, 645 F. Supp. 2d 98 (E.D.N.Y. 2008) .................................. 16, 19

*United States v. Rand*, No. 3:16-cr-00029, 2021 WL 4394782 (D. Nev. Sept. 24, 2021),
   *aff'd*, No. 21-10288, 2022 WL 3359173 (9th Cir. Aug. 15, 2022)...................................... 8

*United States v. Wilgus*, 638 F.3d 1274 (10th Cir. 2011) .......................................... 22

*Watkins-El v. Dep't of Educ.*, No. 16-cv-2256,
   2016 WL 5867048 (E.D.N.Y. Oct. 7, 2016)........................................................... 21

*Watson v. Christo*, 837 F. App'x 877 (3d Cir. 2020)............................................... 22

*We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021),
   *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022) .......................... 28, 29

*Zhang v. Zhang*, No. 19-683, 2022 WL 2057793 (2d Cir. June 8, 2022)................................ 34

**Statutes**

42 U.S.C. § 2000bb-1(b)...............................................................................22

42 U.S.C. § 2000e(j) ..................................................................................31

**Rules**

Fed. R. Civ. P. 36(a)(3)............................................................................. 11

Fed. R. Civ. P. 56(a) .............................................................................. 13

**Other Authorities**

Michael Daly, *The Totally Preventable Death of a Brooklyn Icon*, The Daily Beast
(May 14, 2021), https://www.thedailybeast.com/the-totally-preventable-death-of-dolores-
perri-brooklyn-icon-and-gary-null-protege.................................................................. 8

New York Fed Actions Related to COVID-19, Fed. Reserve Bank of N.Y.,
https://www.newyorkfed.org/markets/new-york-fed-actions-related-to-covid-19.................... 3

Defendant Federal Reserve Bank of New York ("New York Fed" or "Bank") respectfully submits this memorandum of law in support of its motion for summary judgment on the remaining claims in Plaintiffs' Amended Complaint (Dkt. No. 24) ("Am. Compl."), made pursuant to the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*., the First Amendment of the U.S. Constitution, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

## PRELIMINARY STATEMENT

After nearly a year of discovery, the undisputed record makes clear that Plaintiffs are unable to meet their evidentiary burden on any of their claims. To the contrary, the evidence— which Plaintiffs sought to conceal at every turn—clearly demonstrates that Plaintiffs' claimed religious objections to Covid-19 vaccination are insincere. The undisputed record is replete with documentary and testimonial evidence that Plaintiffs harbor secular opposition to Covid-19 vaccination and fabricated religious objections to Covid-19 vaccines in an attempt to circumvent the New York Fed's Covid-19 Vaccination Policy ("Vaccination Policy").

Plaintiff Lori Gardner-Alfred relied on a "vaccination exemption package" she purchased for $487 that was advertised on Facebook for sale to the general public to claim a religious objection to Western medicines and medical procedures, including Covid-19 vaccines. The New York Fed's independent investigator purchased the same package for the same price—despite having no affiliation whatsoever with Gardner-Alfred's purported religion. The Court has already granted an adverse inference against Gardner-Alfred and recognized that her purchase of the exemption package "clearly negate[s]" that her religious beliefs are sincerely held. May 17, 2023 Op. & Order (Dkt. No. 149) ("Sanctions Order") at 27. Gardner-Alfred's alleged religious beliefs are also flatly contradicted by her extensive medical history, which she conceded at her

deposition is wholly inconsistent with her stated views, and which precludes any showing of a religious conflict with Covid-19 vaccination.

Similarly, Plaintiff Jeanette Diaz attended a webinar given by a secular anti-vaccine activist that included a "Preventing Covid-19 Mandates Toolkit" from the Children's Defense Fund (a secular anti-vaccine group), then searched online for a claimed religious conflict with Covid-19 vaccination, which her own pastor refused to support. Eight days later, she applied for a religious accommodation from the Vaccination Policy. She claims that her religious beliefs forbid Covid-19 vaccines because they contain or are manufactured with aborted fetal cell lines. Diaz conceded in her deposition, however, that she does not check whether medications she takes contain or are manufactured with aborted fetal cell lines, and agreed she can take medications and vaccines that do not contain and are not manufactured with aborted fetal cell lines. The undisputed and unrebutted medical expert report in the record makes clear that Moderna and Pfizer Covid-19 vaccines neither contain nor are manufactured with aborted fetal cell lines, so by Diaz's own admission, she has no religious conflict with Covid-19 vaccination.

Plaintiffs' lack of sincerity pervades this entire litigation. Each of Plaintiffs' claims is subject to summary judgment because Plaintiffs cannot meet the threshold requirement of establishing sincerely held religious beliefs that conflict with Covid-19 vaccination. Summary judgment is also warranted for the following additional, independent reasons based on the uncontroverted record. As to Plaintiffs' RFRA claims, the undisputed evidence shows that requiring Plaintiffs to be vaccinated was the least restrictive means of furthering the New York Fed's compelling interests in protecting its workforce and mission. Plaintiffs' First Amendment claims are subject to summary judgment as a matter of law because the New York Fed's policy was neutral and generally applicable, and rationally related to legitimate interests. Plaintiffs'

Title VII claims fail because granting Plaintiffs an accommodation would indisputably have imposed an undue hardship on the New York Fed.  Finally, the undisputed record and the findings of this Court demonstrate that the entire underpinnings of Plaintiffs' allegations are demonstrably false and constitute a fraud on the court and unclean hands.  The Court should thus grant summary judgment for the New York Fed on all of Plaintiffs' claims.

<u>**STATEMENT OF UNDISPUTED FACTS**</u>

**I.      COVID-19 VACCINATION SAFEGUARDED THE NEW YORK FED'S WORKFORCE AND MISSION**

The material facts are not in dispute.  The New York Fed is an operating arm of the Federal Reserve System, the nation's central bank.  It performs a variety of critical federal functions, including implementing and executing United States monetary policy, holding accounts for foreign central banks, supervising financial institutions, operating a nationwide payments system, and distributing United States banknotes to financial institutions.  Declaration of Lacey Dingman-Woodsmall, dated June 14, 2023 ("Dingman Decl.," and annexed exhibits, "Dingman Ex.") ¶ 4.  During the Covid-19 pandemic, the New York Fed designed and implemented emergency lending facilities to support the economy.  *Id.* at ¶ 5; *see also, e.g.*, New York Fed Actions Related to COVID-19, Fed. Reserve Bank of N.Y., https://www.newyorkfed.org/markets/new-york-fed-actions-related-to-covid-19 (last visited June 14, 2023).

Covid-19 has caused over 6.8 million deaths, with more than 755 million confirmed cases worldwide, making it one of the deadliest pandemics of all time.  Ex. 1 (Dr. Rock Report) at 5.[1] Following the onset of the pandemic in March 2020, most New York Fed staff, including Plaintiffs—Senior Executive Specialists to the New York Fed's Chief People Officer (Lacey

---

[1] "Ex." refers to exhibits to the Declaration of Daphne Ha dated June 15, 2023, filed concurrently with this motion.

Dingman) and Chief Information Officer (Pamela Dyson)—worked remotely.  Am. Compl. ¶¶ 2-3, 12; Dingman Decl. ¶¶ 9, 12.  The New York Fed extensively monitored Covid-19 infection levels and medical guidance regarding Covid-19 throughout the pandemic.  Dingman Decl. ¶ 13.  As Covid-19 vaccines became widely available in summer 2021, the New York Fed announced a forthcoming in-office work requirement for employees of at least several days a week, Am. Compl. ¶ 26; Ex. 2 at FRBNY_GD_0000007, and decided that, going forward, "in-person work is a necessary component of all jobs at the Bank," Dingman Ex. 1 at FRBNY_GD_0000542.

On August 2, 2021, the New York Fed instituted a Covid-19 Vaccination Policy that required all employees to be fully vaccinated against Covid-19 unless they qualified for a religious or medical accommodation.  Am. Compl. ¶ 28; Dkt. No. 24-2 (Am. Compl. Ex. B, Dec. 8, 2021 Vaccination Policy).  The New York Fed required vaccination because it determined that, "[b]ased on the extensive medical data available, the most effective way to prevent getting or spreading COVID-19 is to get vaccinated," and "[i]n requiring vaccinations, [the New York Fed is] able to meet [its] goals of trying to keep everyone healthy while being able to continue operating despite the uncertainty the pandemic presents."  Dingman Ex. 2 at FRBNY_GD_0001579.

## II.   PLAINTIFFS SOUGHT RELIGIOUS ACCOMMODATIONS DESPITE HAVING NO RELIGIOUS OBJECTIONS TO COVID-19 VACCINATION

Plaintiffs each sought religious accommodations from the Vaccination Policy—although the undisputed record reveals that neither has a religious objection to Covid-19 vaccination.

### A.   Plaintiff Gardner-Alfred

Gardner-Alfred "claims to be a member of the Temple of Healing Spirit" who "opposes the invasive techniques of traditional medicine."  Sanctions Order at 2 (citing Am. Compl. ¶ 17); Dkt. No. 29 (Apr. 19, 2022 Decl. of Lori Gardner-Alfred ("Gardner-Alfred Decl.")) ¶¶ 9, 35 ("I

believe in the sanctity of my body and that it should not be defiled.").  She alleges that because
of her religious beliefs, she does not undergo invasive Western medical techniques or take
medications, including Covid-19 vaccines, and cannot take Covid-19 tests.  Gardner-Alfred
Decl. ¶ 35; Ex. 3 (Gardner-Alfred Dep. Tr.) at 34:23-24, 85:10-19.  On August 9, 2021, Gardner-
Alfred submitted to the Bank an affidavit in support of her request for a religious
accommodation, and later produced in discovery a handwritten letter dated July 25, 2021 from
the Temple of the Healing Spirit.  Both documents state that vaccinations and Covid-19 tests
conflict with Gardner-Alfred's religious beliefs.  Am. Compl. ¶ 33; Dkt. No. 24-3 (Am. Compl.
Ex. C); Ex. 4.

       Gardner-Alfred's August 7, 2021 affidavit and July 25, 2021 membership letter are part
of a "vaccination exemption package" she admits that she bought for $487 from the "Reverend
Dr." Phillip Valentine, "who claim[s] to be the founder of the Temple of Healing Spirit."
Sanctions Order at 11, 27; Ex. 3 at 162:11-163:15; Tr. of Hrg. (May 9, 2023) at 67:21-25.
Valentine advertises this package on Facebook for sale to the public.  Declaration of Adam
Deutsch, dated June 13, 2023 ("Deutsch Decl.," and annexed exhibits, "Deutsch Ex.") ¶¶ 4.a-c;
Deutsch Exs. 1-3.  The New York Fed hired an independent investigator who successfully
purchased a vaccination exemption package simply by calling Valentine and paying the
requested $475 fee plus $12 shipping ($487 total)—with no affiliation with Valentine or his
Temple or any demonstration of religious faith.  Deutsch Decl. ¶¶ 6-8, 12; *compare, e.g.*, Ex. 4
*and* Dkt. No. 24-3 (Am. Compl. Ex. C) at 2 *with* Deutsch Ex. 5 at FRBNY_GD_0034154-55;
Sanctions Order at 40.  Valentine told Deutsch that, since 1983, he has sold "per year, about
three or four hundred" vaccination exemption packages.  Deutsch Decl. ¶ 6; Deutsch Ex. 4 at
5:21-22, 6:5-24.

During discovery, Gardner-Alfred refused to produce the entire contents of the exemption package she received or the record of her payment to Valentine and, during a May 9, 2023 sanctions hearing, "spun a story" as to why.  Tr. of Hrg. (May 9, 2023) at 60:7-61:6, 68:1-70:21, 97:9-16; Sanctions Order at 23-26.  The Court granted an adverse inference that Gardner-Alfred "purchased the same vaccination exemption package, in the same way and for the same amount, as the New York Fed's independent investigator."  Sanctions Order at 40.

Despite claiming to have been a Temple member for more than two decades, Gardner-Alfred cannot identify a single individual who ever attended a Temple service, whether in person or virtually, and could not produce any e-mails with links to virtual services.  Ex. 3 at 26:4-6, 58:15-18, 173:17-174:20; Dkt. 97-4 (Feb. 22, 2023 Ltr. from M. Schmidt) ¶ 1 (responding to request in Dkt. 97-3 (Feb. 10, 2023 Ltr. from D. Ha) ¶ 1).  She has never seen the Temple's description of its "ecumenical doctrine."  Tr. of Hrg. (May 9, 2023) at 76:6-16; Sanctions Order at 24.  In fact, she omitted any mention of the Temple when she submitted her religious accommodation paperwork to the New York Fed.  Dkt. No. 24-3 (Am. Compl. Ex. C).

Furthermore, in direct contradiction to her alleged beliefs, Gardner-Alfred admits that she has undergone "invasive" "Western" medical procedures over the past ten years.  Not only did Gardner-Alfred elect to receive multiple injections and implants—including punctal plug implants in her eyes ("[b]ecause my eyes were really dry")—Gardner-Alfred also testified that she opted to undergo two surgeries and has taken at least three prescription medications and seven over-the-counter supplements in the past decade.[2]  In addition, in 2021, Gardner-Alfred

---

[2] *See* Ex 3 at 152:17-153:2 & Ex. 25 at -0276 (anesthesia injection); Ex. 3 at 153:3-7, 155:2-10, 156:5-11 & Ex. 27 at -7022 to -7023 (two septocaine injections); Ex. 3 at 153:8-19, 155:11-19, 156:21-157:24; 158:15-24 & Ex. 27 at 7022 to -7024 (multiple dental implants); Ex. 3 at 126:4-9, 129:15-24, 130:8-12, 131:5-12 & Ex. 24 at -6987 (punctal eye plugs, including consent form acknowledging "punctal plug is a foreign material"); Ex. 3 at 149:22-25, & Ex. 25 at -0274 (lesion surgery); 150:16-152:7 (biopsies) & Ex. 25 at -0282 (2018 biopsy), -0300 (referencing

took "two or three tablets" of ivermectin, "as a [p]reventative measure[ ] to "boost[ her] immune

system."  May 9, 2023 Hrg. Tr. 53:10-12; Ex. 3 at 104:7-105:4; Ex. 28 at -7210.  Gardner-Alfred

concedes that these procedures and medications violated her purported religious beliefs:

> Q. In the past few years, you've had biopsies, a lesion removal,
> anesthesia injections, tear duct implants, and dental implants,
> among other western procedures; is that correct?
>
> A. That's correct.
>
> Q. Do you agree that these medications and procedures go against
> your beliefs?
>
> A. Yes.

Ex. 3 at 159:5-17.  Gardner-Alfred also admits that she took a Covid-19 test in November 2021

and that Covid-19 tests violate her purported religion.  Ex. 3 at 84:6-11, 85:10-19; Ex. 4.

### B.    Plaintiff Diaz

Diaz claims to be a baptized Catholic who objects to vaccines "created using human cell

lines derived from abortion."  Sanctions Order at 2 (quoting Am. Compl. ¶¶ 19-20); *see also* Dkt.

No. 30 (Apr. 19, 2022 Decl. of Jeanette Diaz) ("Diaz Decl.") ¶ 33.  She explained at deposition

that her objection is to vaccines that "contain," "are manufactured with" or are "produced with"

aborted fetal cell lines.  Ex. 6 at 58:9-13, 161:10-16, 150:24-151:3.  She does not object to

vaccines "that don't contain aborted fetal cell lines" or "are not manufactured with aborted fetal

cell lines," *id*. at 200:12-18, and she acknowledges she would take such a vaccine, *id*. at 195:

19-22.

Notwithstanding Diaz's claimed religious objection, the record is replete with

uncontroverted evidence—much of which Diaz wrongfully withheld during discovery, Sanctions

Order at 39—that Diaz's objection to Covid-19 vaccines is based solely on secular, not religious,

---

biopsy in 2009); Ex. 3 at 150:5-7 & Ex. 26 (referencing bunionectomy)); Ex. 3 at 123:7-126:21 & Ex. 24
(prescription medication); Ex. 3 at 117:22-119:22 & Ex. 23 (two additional prescriptions); Ex. 3 at 98:14-100:16,
102:22-103:25 & Ex. 28 (referencing over-the-counter supplements including ones purchased from Gary Null).

reasons.  In accordance with the Court's direction at the May 9 sanctions hearing, Plaintiffs

produced 8,593 pages of documents after the close of discovery that they had previously

withheld as "irrelevant or 'spam.'"  Sanctions Order at 16; Ha Decl. ¶ 8; Ex. 7.  One of the

documents in that production shows that Diaz attended an August 22, 2021 webinar entitled

"How to Survive COVID" given by an individual named Gary Null, from whom Gardner-Alfred

previously purchased medical supplements.  Ex. 8; Ex. 3 at 99:25-100:10.[3]

The seminar materials included a URL list[4] with links to 12 documents including: "White

Paper – Experimental Covid Vaccines;" "Review of Ivermectin Efficacy;" and a Children's

Health Defense "Preventing Vaccine Mandates Toolkit."[5]  Exs. 8-9.  This appears to be the URL

list that was a subject of the May 9, 2023 sanctions hearing.  The Court found that Diaz gave

testimony that "lacked any credibility whatsoever" about her failure to produce the list and

recognized that once produced, the URL list "has the potential to evince Diaz's true concerns

about Covid-19 and the vaccine and whether they were or were not rooted in sincere religious

beliefs."  Sanctions Order at 28-29.

Diaz wanted a medical accommodation and submitted a request for one, but because she

and her doctor "did not agree on the vaccine," Diaz abandoned her attempt to avoid vaccination

on medical grounds.  Ex. 6 at 210:3-17 ("My doctor wanted me to get vaccinated and I chose not

to.").  It is undisputed that on August 30, 2021—eight days after the Null webinar—Diaz spoke

---

[3] Null has called Covid-19 vaccines a "massive fraud."  Michael Daly, *The Totally Preventable Death of a Brooklyn Icon*, THE DAILY BEAST (May 14, 2021), https://www.thedailybeast.com/the-totally-preventable-death-of-dolores-perri-brooklyn-icon-and-gary-null-protege.

[4] On September 22, 2021, Diaz received an email thanking her for joining "the LIVE Webinar" in August, with links to the recorded session and to the seminar materials, including the URL list.  Ex. 8.

[5] *See United States v. Rand*, No. 3:16-cr-00029, 2021 WL 4394782, at *4 (D. Nev. Sept. 24, 2021), *aff'd*, No. 21-10288, 2022 WL 3359173 (9th Cir. Aug. 15, 2022) (citing news sources that found Children's Health Defense was "a major source of vaccine misinformation," and "one of two organizations that spread the majority of vaccine misinformation on Facebook").

to her pastor by phone and followed up by email asking him to help her obtain a religious

accommodation from the Vaccination Policy.  She asked him to sign a template letter for a

religious accommodation request that she found on the internet from the Colorado Catholic

Conference, an organization with which she has no affiliation.  Ex. 10; Ex. 6 at 108:3-110:6,

120:3-12, 130:23-25.  Her pastor refused to sign it and sent her a statement from her Archdiocese

stating that "it is not possible for a Catholic to claim an exemption from vaccination on religious

grounds," but "[a] Catholic may claim a personal exemption on the grounds of conscience."  Ex.

11; Ex. 6 at 139:8-12, 150:9-11, 151:21-25.  After her pastor's refusal, Diaz signed the internet

template letter herself and, on September 1, 2021, submitted it to the New York Fed as her

request for religious accommodation.  Ex. 6 at 152:2-8; Dkt. No. 24-4 (Am. Compl. Ex. D).  In

discovery, Diaz withheld the communications with her pastor from productions and relevant

interrogatory responses.  *See* Ex. 6 at 141:10-142:8, 424:22-425:14.

From October 2021 through March 2022, Diaz subscribed to at least eight email

newsletters from anti-vaccination sources from which she received hundreds of emails opposing

Covid-19 vaccination on secular grounds.  *See* Ha Decl. ¶ 8 (listing the eight newsletter sources);

*e.g.*, Ex. 12 at -6377 (November 2021 Children's Health Defense email, "CDC Manipulated

Studies In Order to Prop Up Official COVID Narrative"); Ex. 13 at -8369 (January 2022

Children's Health Defense email, "Schools Shouldn't Mandate 'Most Dangerous Vaccines in

Human History'"); Ex. 14 at -9883 (March 2022 Lawrence B. Palevsky Holistic Child Health

Newsletter stating "the so-called SARS-CoV-2 virus exists only as a mental construct whose

existence in the real world has been disproven by the science itself"); *id.* at -9884 (referring to

vaccinations as "murder shots"); Ex. 7 (sample emails from the other six anti-vaccination

sources, including The Epoch Times).

The uncontroverted record also shows that Diaz sent similar messages to others.  *E.g.*, May 9, 2023 Hrg. Tr. 29:17-23, 40:22-41:3; Ex. 15 (forwarding Project Veritas email to Gardner-Alfred).  Among them, on December 22, 2021, she sent an image to Gardner-Alfred scrambling the letters of the terms "Delta" and "Omicron" (two Covid-19 variants) into the phrase "Media Control."  May 9, 2023 Hrg. Tr. 40:22-41:3; Ex. 16.  On January 18, 2022, Diaz sent an individual she identified as her babysitter a fake vaccination card.  Sanctions Order at 30-31.  On March 4, 2022, she sent Gardner-Alfred and their advisor Garry Webb-Bey an email regarding "pzifer [*sic*] side effects to vaccine," Ex. 17, which echoed concerns she expressed to the New York Fed in earlier correspondence where she put quotation marks around references to the words "vaccine," "vaccinated," and "vaccination," referred to Covid-19 vaccines as "an experimental medical procedure," and expressed concerns about the "adverse effects and reactions reported" from them.  Ex. 19.

Diaz's medical records and deposition testimony reveal that she filled approximately forty prescriptions in her name for fourteen different medications between August 2012 and August 2022.  Ex. 29.  Diaz does not dispute that she filled, re-filled and paid for these prescriptions.  Though she claims, incredibly, that she did not take some of these medications (despite admitting to repeatedly re-filling and paying for them), she admits that she took others and that she received a pain medicine injection.  She does not know and did not check whether those medications contained or were made with aborted fetal cell lines.  Ex. 6 at 159:15-23, 187:23-189:3, 189:16-190:2; *see generally id. at* 165:13-190:2.  She testified that "because [she doesn't] know" if something was made using aborted fetal cell lines, "[she] can take it."  *Id.* at 161:7-9.  With respect to Covid-19 vaccines, Diaz admits that she cannot recall inquiring whether the vaccines contained or were manufactured with aborted fetal cell lines or knowing

"anything about the vaccines before [she] made [her] religious accommodation request."  *Id.* at 60:3-61:23.

Had Diaz engaged in the inquiry consistent with her alleged religious beliefs, she would have learned, as set forth in the undisputed expert opinion of the New York Fed's medical expert—an infectious disease and Covid-19 specialist at Johns Hopkins Hospital and an Associate Professor at Johns Hopkins University—that the mRNA Covid-19 vaccines are neither manufactured with nor contain aborted fetal cell lines.  Ex. 1 (Dr. Rock Report) at 5, 11 ("The mRNA COVID-19 vaccines produced by Pfizer and Moderna do not use any fetal cell cultures in order to manufacture or produce the vaccine.  In other words, the mRNA vaccines themselves do not contain any aborted fetal cells or fetal cell cultures, nor are they manufactured or produced with such cells or cell cultures.").

## III.   THE NEW YORK FED EVALUATED AND DENIED PLAINTIFFS' REQUESTED ACCOMMODATIONS

In assessing religious accommodation requests under the Vaccination Policy, the New York Fed's People and Engagement Group assembled specific facts relevant to assessing the risk of Covid-19 spread and operational disruption posed by each individual who requested an accommodation.  Dingman Decl. ¶ 15; Dingman Ex. 3.  Plaintiffs worked on the executive floor where the entirety of the New York Fed's Executive Committee, including its President, is located.  Dingman Decl. ¶ 10; Ex. 20 at Nos. 3, 11.[6]  Given the nature of the New York Fed's work, distinguished guests from U.S. and state agencies, foreign governments, financial institutions, and others often meet with Bank staff on this floor.  Dingman Decl. ¶ 11.

---

[6] The matters in the New York Fed's Requests for Admission were admitted by Plaintiffs, who did not answer or object.  Fed. R. Civ. P. 36(a)(3); Ha Decl. ¶ 21.

Although Plaintiffs dispute the frequency of their interactions with others at the office, they do not dispute that they had interactions with their principals, other employees and external visitors, and that anyone who entered the office of either Bank executive within their office suite had to pass through the room containing their workstations. Ex. 20 at Nos. 5-6, 13-14; Ex. 21 at 76:17-78:23; Gardner-Alfred Decl. ¶ 30 ("I would engage with visitors to the New York Fed"), Diaz Decl. ¶ 28 (same). In the office, Plaintiffs each sat in a shared antechamber next to another executive assistant and outside the offices of two Bank executives, including their principal. Dingman Decl. ¶ 10; Ex. 20 at Nos. 4, 12. Gardner-Alfred sat across from a ceremonial conference room that held up to 150 people where meetings and large gatherings take place. Dingman Decl. ¶ 11; Ex. 20 at Nos. 7-8; Dingman Ex. 3 at -980; Ex. 18 at 250:2-251:19.

The New York Fed considered Plaintiffs' interactions necessary to their ability to satisfactorily provide executive assistance in an in-person environment. Dingman Ex. 3 at -977-78 (Diaz), -980 (Gardner-Alfred); Dingman Decl. ¶ 18. In addition, Plaintiffs would be expected to engage with visitors to an even greater degree upon their return to the office than before the pandemic, because during the pandemic, the New York Fed eliminated executive floor receptionist positions. Dingman Decl. ¶ 19; Dingman Ex. 4. In light of Plaintiffs' job responsibilities, the New York Fed determined that Plaintiffs could not move to other locations within the building without limiting their job performance. *See* Dingman Ex. 3 at -979, -980; Dingman Decl. ¶ 20.

Considering all this information, the New York Fed's Chief People Officer and Chief Financial Officer, as co-chairs of the New York Fed's Pandemic Steering Committee, determined that Plaintiffs' returning to the office unvaccinated "would increase the safety risks to the Bank and its other employees" and had the potential to "negatively impact productivity."

12

Dkt. No. 24-8 (Am. Compl. Ex. H at 6) (Gardner-Alfred); Ex. 19 at -743 (Diaz); Dingman Decl.
¶ 21.  On November 29, 2021, the New York Fed notified Plaintiffs that because of their
essential job duties, "including the frequency of [their] interaction with external visitors and
others at the Bank and [their] proximity to others while conducting [their] job responsibilities,"
Plaintiffs could not be accommodated once employees returned to the office.  Dkt. No. 24-8
(Am. Compl. Ex. H at 6) (Gardner-Alfred); Ex. 19 at -743 (Diaz).

It is undisputed that no other executive assistant, or any other employee who sat on the
executive floor, was granted a religious accommodation from the Vaccination Policy.  Dingman
Decl. ¶¶ 23-24; Ex. 21 at 51:8-14.

## ARGUMENT

## I.      SUMMARY JUDGMENT STANDARD

The New York Fed is entitled to summary judgment on each of Plaintiffs' claims under
RFRA, the First Amendment, and Title VII because the undisputed record "shows that there is
no genuine dispute as to any material fact and the [New York Fed] is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute can only exist where "the evidence is
such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is warranted where, as here, "the nonmoving party has fail[ed] to
make a showing sufficient to establish the existence of an element essential to that party's case,
and on which that party will bear the burden of proof at trial." *Bob v. Madison Sec. Grp., Inc.*,
14 Civ. 9727, 2016 WL 6952259, at *4 (S.D.N.Y. Nov. 28, 2016) (internal citations and
quotation marks omitted).  Plaintiffs "may not rely on mere speculation or conjecture as to the
true nature of the facts," and "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Ball v. Marriott Int'l, Inc.*, 19-cv-10593, 2022 WL 4133207, at

*10 (S.D.N.Y. Sept. 12, 2022) (Liman, J.) (internal citations and quotation marks omitted).  "At

this stage of the proceedings, [Plaintiffs] . . . 'must offer some hard evidence showing that [their]

version of the events is not wholly fanciful.'"  *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F.

Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149

(2d Cir. 1998)).

"[T]he salutary purposes of summary judgment — avoiding protracted, expensive and

harassing trials — apply no less to discrimination cases than to other areas of litigation."  *Abdu-*

*Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (*quoted in Ball*, 2022 WL

4133207, at *10) (alteration omitted).  They are certainly applicable here.

## II.     SUMMARY JUDGMENT SHOULD BE GRANTED ON ALL CLAIMS BECAUSE PLAINTIFFS CANNOT SHOW THAT THEY HAD SINCERELY HELD RELIGIOUS BELIEFS THAT PRECLUDED COVID-19 VACCINATION

To establish a central and necessary element of each of their claims, Plaintiffs must

demonstrate sincerely held religious beliefs that conflict with, or are substantially burdened by,

Covid-19 vaccination.  Plaintiffs' bald assertions are insufficient to meet this burden.  The

uncontroverted evidence, as well as the adverse inference the Court granted regarding Gardner-

Alfred's purchase of a "vaccination exemption package," Sanctions Order at 40, demonstrate that

Plaintiffs cannot make this prima facie showing.

### A.     No Reasonable Juror Could Conclude Plaintiffs' Purported Religious Objections to Covid-19 Vaccination Are Sincere

RFRA requires Plaintiffs to prove that their asserted religious objections to Covid-19

vaccination are sincere.  "[A plaintiff's] pretextual assertion of a religious belief in order to

obtain an exemption . . . would fail."  *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717

n.28 (2014); *Kane v. De Blasio*, 575 F. Supp. 3d 435, 442 (S.D.N.Y. 2021), *aff'd sub nom. Keil*

*v. City of New York*, 2022 WL 619694 (2d Cir. Mar. 3, 2022) (sincerity is a "threshold question" for "every" First Amendment religious exercise claim); *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (must show bona fide religious belief under Title VII).  While the sincerity of alleged beliefs is a question of fact, courts do not hesitate to grant summary judgment where evidence shows "no reasonable juror could conclude that Plaintiff had a sincerely held religious belief."  *Bob*, 2016 WL 6952259, at *9.

### 1.    Plaintiff Gardner-Alfred

No reasonable juror could conclude Gardner-Alfred's alleged religious conflict with Covid-19 vaccines is sincere.  Not only is there no evidence that Gardner-Alfred has any relationship with the Temple of the Healing Spirit beyond paying for vaccination exemption paperwork, but her own medical history also flatly contradicts her alleged beliefs.

It is established that Gardner-Alfred paid Valentine almost $500 for the documents she used to support her claimed religious conflict with Covid-19 vaccines; willfully withheld portions of the vaccination exemption package she received; and lied about the manner in which she paid for it.  May 9, 2023 Hrg. Tr. at 67:21-25; Sanctions Order at 23-27.  The undisputed record shows that Valentine has been selling hundreds of "vaccination exemption packages" annually for decades and sold a package to the New York Fed's independent investigator, who has no religious affiliation whatsoever to the Temple of the Healing Spirit.  Deutsch Decl. ¶ 6; *compare, e.g.*, Ex. 4 *and* Dkt. No. 24-3 (Am. Compl. Ex. C) at 2 *with* Deutsch Ex. 5 at FRBNY_GD_0034154-55.  The Court granted an adverse inference that the New York Fed's independent investigator and Gardner-Alfred purchased the same exemption package from Valentine in the same way and for the same price.  Sanctions Order at 40.  As the Court noted, "evidence that Gardner-Alfred ordered and received the exact same package in the exact same

15

way as Defendant's independent investigator . . . clearly negate[s] that Plaintiff's religious beliefs were sincerely held."  Sanctions Order at 27.

Gardner-Alfred cannot identify a single individual who ever attended a Temple service. No documentary evidence exists to support that she ever attended any Temple service, and she admits she has never seen the Temple's ecumenical doctrine.  *See supra* at 6 (citing, among others, Ex. 3 at 173:17-174:20, Tr. of Hrg. (May 9, 2023) at 76:6-16; Sanctions Order at 24). The record is clear that Gardner-Alfred "joined [a religious] group solely for the purpose of attempting to gain an exemption" from vaccination requirements, *Sherr v. Northport-E. Northport Union Free Sch. Dist.*, 672 F. Supp. 81, 96 (E.D.N.Y. 1987), and her "pretextual assertion of a religious belief" fails, *Burwell*, 573 U.S. at 717 n.28.

Even if Gardner-Alfred could point to some evidence of a connection to the Temple of Healing Spirit beyond a purchased exemption package, her conduct belies her alleged religious beliefs and prevents her from meeting the threshold showing of sincerity.  "[A]n adherent's belief would not be 'sincere' if he acts in a matter inconsistent with that belief."  *United States v. Manneh*, 645 F. Supp. 98, 111 (E.D.N.Y. 2008) (internal quotation marks and citation omitted).  Undisputed evidence shows—and Gardner-Alfred admits—that over the past ten years, she has undergone extensive "invasive," "Western" medical procedures, including injections, implants, and surgeries (many of these elective and cosmetic), and has taken numerous prescription and over-the-counter medications, including ivermectin. *See supra* at 6-7 & n.2 (citing, among others, Ex. 3 at 159:5-17); May 9, 2023 Hrg. Tr. 53:10-12 (ivermectin).  In addition, she took a Covid-19 test in November 2021 though she concedes Covid-19 testing violates her purported religious beliefs.  Ex. 3 at 84:6-11, 85:10-19.

Because her own conduct repudiates her purported religious objection to Covid-19

vaccination, Gardner-Alfred cannot show her religious beliefs are sincere or bona fide, and summary judgment should be granted.  *See Bob*, 2016 WL 6952259, at \*8-9 ("no reasonable juror could conclude that Plaintiff had a sincerely held religious belief that conflicted with working on Fridays" where "Plaintiff work[ed] shifts of at least eight hours' duration on 48 different Fridays"); *Bailey v. Associated Press*, No. 01 Civ. 4562, 2003 WL 22232967, at \*8 (S.D.N.Y. Sept. 29, 2003) (granting summary judgment where Plaintiff previously worked on Sundays and "did not attend religious services on Sunday even when he was off from work"); *Hussein v. Waldorf Astoria*, 134 F. Supp. 2d 591, 596-97 (S.D.N.Y. 2001) ("a reasonable jury could only find that Hussein's religious assertion [that he had to wear a beard] was not bona fide" where "Hussein had never worn a beard to work" until the incidents at issue and shaved his beard shortly thereafter), *aff'd*, 31 F. App'x 740 (2d Cir. 2002); *Sherr*, 672 F. Supp. at 96 (no sincerely held belief where plaintiff, a father suing to obtain an exemption from mandatory school vaccinations, testified "although he opposed any 'intrusion' into the body on religious grounds, he had had [his son] X-rayed when it was believed that the boy had broken his leg, allowed dentists to remove decay from cavities his children might have, and had his children circumcised").

### 2. Plaintiff Diaz

Similarly, the Court should grant summary judgment on Diaz's claims because no reasonable juror could conclude she has a sincere religious belief that conflicts with Covid-19 vaccination given the evidence—that she attempted to withhold and was ultimately compelled to produce—showing her secular objections to Covid-19 vaccines, and her admission that she has

repeatedly taken medications without checking whether they contained or were manufactured with aborted fetal cell lines.

Diaz steadfastly attempted to obscure her "true concerns about Covid-19 and the vaccine" throughout this litigation by wrongfully withholding "highly relevant" documents.  Sanctions Order at 28-29.  Nevertheless, despite Diaz's intentional misconduct, some of the very documents she admittedly withheld from the New York Fed "clearly negate" her claims. Sanctions Order at 27.  As set forth above, the evidence is clear that, days before submitting her religious accommodation request to the New York Fed, Diaz attended a secular anti-vaccination webinar by a holistic medicine purveyor that included a "toolkit" from the Children's Health Defense to fight "vaccine mandates."  Exs. 8-9.  Eight days later, Diaz submitted to the New York Fed a letter she found on the internet purporting to articulate a religious basis for refusing vaccination.  Ex. 10; Ex. 6 at 108:3-110:6, 120:3-12.  She subscribes to at least eight anti-vaccination newsletters unaffiliated with any religion, distributed a "fake Covid vaccination card" to her babysitter, and spreads conspiracy theories about the Covid-19 virus and the dangers of vaccines—for example, that the Delta and Omicron Covid-19 variants reflect "media control." Ha Decl. ¶ 8; Sanctions Order at 30-31; Exs. 15-17.  These judicially recognized and undisputed facts all contravene Diaz's alleged religious beliefs.

In addition, Diaz's own past medical history alone is sufficient to preclude any prima facie showing of sincerity because it is flatly inconsistent with her claimed religious beliefs about Covid-19 vaccination.  Ten years of Diaz's pharmaceutical and medical records obtained in discovery reflect fourteen different prescription medications, filled and refilled approximately forty times, as well as Diaz's receipt of a pain medication injection.  Ex. 6 at 165:13-190:2; Ex. 29.  The uncontroverted evidence shows that Diaz, in direct disregard of her alleged religious

conflict, takes other medications without checking if they contain or are manufactured with aborted fetal cell lines. She admits her view is that "because [she doesn't] know" if something was made using the aborted fetal cell lines, "[she] can take it." Ex. 6 at 159:15-161:16, 174:8-18, 184:7-15, 187:23-190:2. Diaz concedes she cannot recall being aware of any connection between aborted fetal cell lines and Covid-19 vaccines at the time she made her religious accommodation request. *Id.* at 60:3-61:23. These admissions are fatal to Diaz's claims, since a prior inconsistent approach to medication use "distinguish[es] between sincerely held religious beliefs and those beliefs that are either contrived or not religious in nature." *Ferrelli v. Unified Court Sys.*, 1:22 CV 0068, 2022 WL 673863, at *8 (N.D.N.Y. Mar. 7, 2022); *see also Kane*, 575 F. Supp. 3d at 442. The "features of the record . . . are entirely inconsistent" with Diaz's claimed religious objection and signify that Diaz's "invocation of religion to exempt" her from the Vaccination Policy is "purely pretextual." *Manneh*, 645 F. Supp. 2d at 113; *see also Bob*, 2016 WL 6952259, at *8-9; *Bailey*, 2003 WL 22232967, at *8; *Hussein*, 134 F. Supp. 2d at 596-97.

### B. Plaintiffs Cannot Demonstrate a Substantial Burden or Conflict

Under RFRA, the First Amendment, and Title VII, Plaintiffs must demonstrate not only that their religious objection to Covid-19 vaccines is sincere, but also that the Vaccination Policy substantially burdened or conflicted with their religious convictions. *City of Boerne v. Flores*, 521 U.S. 507, 533 (1997) (RFRA); *Skoros v. City of New York*, 437 F.3d 1, 39 (2d Cir. 2006) (Free Exercise claim); *Baker*, 445 F.3d at 546 (2d Cir. 2006) (Title VII). Even taking Plaintiffs' asserted religious beliefs at face value, the undisputed record makes clear that the New York Fed's vaccination requirement did not substantially burden or conflict with them.

Just as Gardner-Alfred's documented medical history makes it impossible for her to establish sincerity, it likewise precludes any showing that her asserted religious beliefs conflict

with Covid-19 vaccination.  Plainly, whatever religious views Gardner-Alfred purports to hold, they are not burdened by receiving medical treatment or medication, including injections.  *See supra* at 6-7 & n.2 (setting forth Gardner-Alfred's medical history); *Bob*, 2016 WL 6952259, at *8-9 (past work history on very days that plaintiff's alleged religious beliefs prevented work precluded prima facie showing of a religious conflict with work requirement and granting summary judgment); *Bailey*, 2003 WL 22232967, at *8 (same).

As to Diaz, she testified that if a medication was not made with aborted fetal cell lines and her doctor recommended it, she would take it.  Ex. 6 at 195:19-22.  She admits that her "doctor wanted [her] to get vaccinated," and that she has no objection to vaccines "that don't contain aborted fetal cell lines" or "are not manufactured with aborted fetal cell lines."  *Id*. at 200:12-18, 210:6-11; *see also id*. at 161:10-16 (Diaz did not take Covid-19 vaccines because she "believe[s]" they are "manufactured with aborted fetal cell lines"); *id*. at 58:9-13 (believes Covid-19 vaccines are produced with aborted fetal cell lines).

Though Diaz speculates that Covid-19 vaccines contain or are manufactured with aborted fetal cell lines, she cannot identify any evidence in support of this assertion—and this alone is fatal to all her claims.  The unrebutted expert record is clear that the mRNA Covid-19 vaccines made by Pfizer and Moderna available at the time of Diaz's accommodation request (and now) do not contain and are not manufactured or produced with aborted fetal cell lines.  Ex. 1 (Dr. Rock Report) at 11.  "[H]uman fetal-derived cells are not used to produce" Pfizer vaccines, nor are they "used in the manufacturing process of" either the original monovalent or subsequent bivalent versions of the Pfizer-BioNTech Covid-19 vaccine.  *Id*. (quoting Pfizer-BioNTech information available online).  Likewise, "the mRNA vaccine developed by Moderna does not contain any products of human or animal origin."  *Id*. (quoting Moderna publication).

While an adherent's *subjective* religious beliefs need not be scientifically accurate to be sincere, when considering the distinct *objective* inquiry of substantial burden, the Court must "consider how the law or policy being challenged *actually operates* and affects religious exercise." *Little Sisters of the Poor Home for the Aged v. Burwell*, 794 F.3d 1151, 1177 (10th Cir. 2015), *vacated and remanded on other grounds sub nom. Zubik v. Burwell*, 578 U.S. 403 (2016) (emphasis added).  The substantial burden inquiry is an objective, "altogether different" inquiry than sincerity and a question of law for courts.  *Catholic Health Care Sys. v. Burwell*, 796 F.3d 207, 217-18 (2d Cir. 2015), *judgment vacated on other grounds by* 578 U.S. 993 (2016); *see also Summers v. Whitis*, No. 4:15-cv-00093, 2016 WL 7242483, at *5 (S.D. Ind. Dec. 15, 2016) ("Assessing whether a genuine conflict exists [under Title VII] requires an objective analysis.").

By Diaz's own articulation, her purported subjective religious conflict is based on demonstrably false and unsupported factual assumptions that the vaccines contain aborted fetal cell lines or were manufactured using them.  Because these assumptions are objectively false, taking either the Pfizer or Moderna vaccines available at the time of her religious accommodation request would not have forced Diaz "to engage in conduct that [her] religion forbids."  *Mahoney v. Doe*, 642 F.3d 1112, 1121 (D.C. Cir. 2011).  Accordingly, her claims fail as a matter of law and summary judgment is warranted.  *See Watkins-El v. Dep't of Educ.*, No. 16-cv-2256, 2016 WL 5867048, at *3 (E.D.N.Y. Oct. 7, 2016) ("Plaintiff bases his opposition on the assertion that these vaccines contain monkey cells, pork derivatives, and aborted human fetuses," but "presents no evidence that these vaccines in fact contain the substances to which he objects") internal quotation marks omitted)); *Pollard v. U.S. Parole Comm'n*, 15-cv-9131, 2016 WL 4290607, at *12-13 (S.D.N.Y. Aug. 11, 2016) (GPS monitoring device did not violate

RFRA because the device could maintain its charge sufficiently long to not require recharging on the Sabbath; there was not "any aspect of [Pollard's] religious exercise which has in fact been hindered or burdened by the charging capabilities of his location monitor"); *Powers v. Washington Dep't of Corr.s*, No. C11-5806, 2013 WL 1755790, at *17 (W.D. Wash. Mar. 29, 2013), *report & recommendation adopted*, 2013 WL 1755790 (granting summary judgment where Plaintiff claimed prison substantially burdened his Muslim beliefs by failing to provide him sufficient calories during Ramadan, but factual record "d[id] not support [Plaintiff's] characterization of the amount of calories in the Ramadan meals or the effect of those calories").

## III.   PLAINTIFFS' RFRA CLAIMS FAIL FOR THE ADDITIONAL REASON THAT THERE WAS NO ADEQUATE SUBSTITUTE FOR COVID-19 VACCINATION

Summary judgment is warranted on Plaintiffs' RFRA claims for the independent reason that requiring Plaintiffs be vaccinated was the least restrictive means of furthering the New York Fed's compelling interests.  RFRA prohibits substantially burdening a person's "exercise of religion" unless doing so is the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000bb-1(b).  "[B]oth prongs of RFRA's strict scrutiny test are legal questions."  *United States v. Friday*, 525 F.3d 938, 949 (10th Cir. 2008); *Nat'l Cap. Presbytery v. Mayorkas*, 567 F. Supp. 3d 230, 240 (D.D.C. 2021).  The New York Fed is not "required 'to refute every conceivable option in order to satisfy the least restrictive means prong of RFRA'" or "prove a negative."  *United States v. Wilgus*, 638 F.3d 1274, 1288-89 (10th Cir. 2011) (quoting *Hamilton v. Schriro*, 74 F.3d 1545, 1556 (8th Cir. 1996)); *see also Watson v. Christo*, 837 F. App'x 877, 880 n.7 (3d Cir. 2020).  Rather, the New York Fed "must support its choice" and "refute the alternative schemes offered by the challenger."  *Wilgus*, 638 F.3d at 1289.

### A.   The Vaccination Policy Furthered Compelling Interests

The New York Fed's requirement that Plaintiffs be vaccinated against Covid-19

furthered two of the Bank's compelling interests: (1) protecting the health and safety of the New York Fed's workforce and those with whom they interact, and (2) ensuring the New York Fed's essential work was not disrupted.  Dingman Ex. 2 at -1579.  Plaintiffs readily concede that "'[s]temming the spread of COVID-19 is unquestionably a compelling interest.'"  Dkt. No. 28 (Mem. In Supp. of Mot. For Prelim. Inj.), at 9 (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020)); *see also S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1614 (2020) (Kavanaugh, J., dissenting) ("combating the spread of COVID-19 and protecting the health of . . . citizens" is "undoubtedly . . . a compelling interest").  The New York Fed also has a compelling interest in ensuring its operations continue with minimal disruption, given the impact of the New York Fed on the nation's economy.  *See United States ex. rel. Kraus v. Wells Fargo & Co.*, 943 F.3d 588, 600, 603-604 (2d Cir. 2019) (Reserve Bank functions include furthering conduct of monetary policy, "promoting the stability of the financial system, promoting the soundness of individual financial institutions, fostering payment and settlement system safety," and directly issuing the nation's currency); *Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*, 742 F.3d 37, 38 (2d Cir. 2014) (New York Fed promotes "uniquely federal interests at stake in stabilizing the national economy").

### B.     Requiring Plaintiffs' Vaccination Was the Least Restrictive Means of Furthering the New York Fed's Compelling Interests

Even assuming, *arguendo*, that Plaintiffs could meet their prima facie burden to show Covid-19 vaccines substantially burdened their religious exercise, requiring Covid-19 vaccination for each Plaintiff furthered the New York Fed's compelling interests and was the least restrictive means for the New York Fed to prevent Covid-19 spread, including on its

executive floor, and the concomitant disruption of its operations.  Plaintiffs' suggested

alternatives did not adequately protect these interests.

> ### 1. Plaintiffs' Vaccination Furthered the New York Fed's Interests and There Was No Adequate Substitute

The New York Fed followed medical guidance regarding Covid-19, Dingman Decl. ¶ 13,

and determined that vaccination was the most effective means to limit Covid-19 spread,

"reduc[e] severe health risks associated with COVID-19," and "continue operating," Dingman

Ex. 2 at -1579.  Indeed, "the data available illustrates that those who have refused to get

vaccinated have necessarily had a greater chance to get and spread the virus" and reduces the risk

of severe disease and long-term complications for those who are infected.  *Roth v. Austin*, 603 F.

Supp. 3d 741, 747 (D. Neb. 2022); *see* Ex. 1 (Dr. Rock Report) at 7 (same); *id.* at 10-11.

Against this backdrop, the New York Fed individually evaluated each religious

accommodation request, including Plaintiffs', based on the essential functions of the requester's

job, the workspace at issue, the extent and nature of interactions with others, and its compelling

interests.  Dingman Decl. ¶¶ 15-17; *see Roth*, 603 F. Supp. 3d at 768 (Air Force must

"demonstrate that the compelling interest they assert is furthered by applying Air Force's

COVID-19 vaccination mandate to every Plaintiff"); *Sabir v. Williams*, 52 F.4th 51, 62 (2d Cir.

2022) (RFRA requires application of compelling interest to "the particular claimant").  In light of

surges of infections among New York Fed staff and the compensating measures required at times

to continue workflows, the New York Fed determined that nothing short of Plaintiffs' being

vaccinated would achieve its safety and operational interests.  Dingman Decl. ¶¶ 14, 22.  As

Senior Executive Specialists, Plaintiffs shared office suites on the executive floor, where many

employees and visitors came—including domestic and foreign officials and other distinguished

guests—and interacted with other employees and visitors at the office as a necessary component

to supporting their principals in an in-person environment.  Dingman Ex. 3 at 977-78 (Diaz); -

980 (Gardner-Alfred); Gardner-Alfred Decl. ¶ 30; Diaz Decl. ¶ 28.  Given these job duties,

returning to the executive floor unvaccinated "would increase the safety risks to the Bank and its

other employees" and had the potential to "negatively impact productivity."  Dkt. No. 24-8 (Am.

Compl. Ex. H at 6); Dingman Decl. ¶ 21.

The New York Fed's determination is supported by unrebutted expert medical opinion:[7]

"[B]ecause Plaintiffs would have interacted with others frequently as part of their job

responsibilities at the office, they posed higher COVID-19 infection risks than individuals whose

job responsibilities did not include such interactions."  Ex. 1 (Dr. Rock Report) at 14.  In

November 2021, when the New York Fed determined it could not accommodate Plaintiffs,

"unvaccinated people had four times the rate of COVID-19 infection compared with fully

vaccinated people," a figure that remained at "three times the rate" in February 2022 when New

York Fed employees returned to the office.  *Id*.[8]  "As a result, Plaintiffs' relatively elevated

infection risk, as unvaccinated individuals, in turn would have increased the risk of COVID-19

spreading in the Federal Reserve Bank of New York, particularly on its executive floor."  *Id*.

Accordingly, "there was no adequate alternative for achieving the Federal Reserve Bank of New

York's goals . . . short of requiring that they be vaccinated against Covid-19."  *Id*. at 13.

     2.    **Plaintiffs' Suggested Alternatives Would Not Have Adequately
Furthered the New York Fed's Compelling Interests**

The undisputed facts and the New York Fed's unrebutted medical epidemiological expert

---

[7] "[C]ourts routinely rely on unrebutted testimony, particularly from experts, to grant summary judgment."  *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, No. 13-cv-4521, 2017 WL 3531684, at *9 n.7 (D.N.J. Aug. 17, 2017); *see generally Est. of Thomas v. Fayette Cnty.*, 194 F. Supp. 3d 358, 368–69 (W.D. Pa. 2016) ("[T]he expert report may allow a moving party to fulfill its initial burden of showing that the nonmoving party has failed to support its claim or failed to introduce a genuine issue of material fact necessitating a trial.").

[8] Unvaccinated people continue to pose higher infection risks than their vaccinated counterparts.  *Id*.

report demonstrate that Plaintiffs' suggested alternatives would not have adequately protected

the New York Fed's compelling interests.  Considering Plaintiffs' "elevated risk, employing

prevention strategies other than vaccination for Plaintiffs would not have been as effective as

vaccination either in providing for the health and safety of the employees and others with whom

Plaintiffs would have come into contact, or ensuring continuity of operations with minimal

disruption, particularly on its executive floor."  *Id.*

Plaintiffs have alleged that relying on proof of prior infection (so-called "natural

immunity"), testing (though this was contrary to Gardner's claimed religious beliefs, *see* Ex. 3 at

84:6-11, 85:10-19), masking, or temperature checks would sufficiently have achieved the New

York Fed's interests.  Am. Compl. ¶ 52.  But there is no record evidence to support those

assertions.  No one else with Plaintiffs' job title and associated duties or on the New York Fed's

executive floor received an accommodation.  *See* Dingman Decl. ¶¶ 23-24; Ex. 21 at 51:8-14.

The New York Fed's unrebutted medical expert explained that "natural immunity" "does not

replace the need for COVID-19 vaccination and does not reliably provide protection compared

with COVID-19 vaccination."  Ex. 1 (Dr. Rock Report) at 14-15 (citing the CDC and Hopkins

Medicine); *see also Short v. Berger*, 599 F. Supp. 3d 844, 862 (D. Ariz. 2022)*, opinion vacated,*

*appeal dismissed as moot,* No. 22-15755, 2023 WL 2258384 (9th Cir. Feb. 24, 2023) (rejecting

RFRA plaintiff's argument that natural immunity is a sufficient alternative to vaccination).

Likewise, testing is "not an adequate substitute for vaccination" because it is "not sufficient as an

intervention to prevent [Covid-19] outbreaks."  Ex. 1 (Dr. Rock Report) at 15 (citing research

article).  "[T]he protection to others a mask affords is only while the mask is being worn," and

masking alone is "not as effective as with COVID-19 vaccination."  *Id.*; *see also Roth*, 603 F.

Supp. 3d at 774 ("It should be obvious that masks and social distancing provide no protection to

a service member who is infected with COVID-19, but COVID-19 vaccination does.").  Lastly, "temperature screenings are ineffective for detecting workers with COVID-19 infection and [are] not recommended."  Ex. 1 (Dr. Rock Report) at 15 (citing research article).  Plaintiffs provide *no* evidence that these suggested alternatives—which go against scientific consensus, *see id.* at 12, 14—were adequate.  *Accord Joseph v. Beccera*, 22-cv-40, 2022 WL 17262231, at *7 n.5 (W.D. Wisc. Nov. 29, 2022) (in RFRA case, "the court will not second-guess near universally accepted health care standards").

Plaintiffs' other proposals that the New York Fed "implement hybrid work schedules to reduce the number of employees in the building," isolate them from all other employees, or allow them to work remotely full-time, Am. Compl. ¶ 52, also would not adequately achieve the New York Fed's interests.  The New York Fed did implement a hybrid approach for Bank employees in February 2022, and determined that Plaintiffs' expected interactions given their essential duties in the hybrid model posed too great a risk to workforce safety and continuity of operations.  Requiring the New York Fed to reduce its overall building population to accommodate two individuals, or having Plaintiffs work in isolation or remotely on a full-time basis once staff returned to the office, were not viable alternatives given Plaintiffs' roles of providing executive assistance, particularly when their principals would be working and attending meetings in the office.  *Abordo v. State of Hawaii*, 938 F. Supp. 656, 662 n.7 (D. Haw. 1996) ("There must be a reasonableness element to the 'least restrictive means' requirement under RFRA."); *see United States v. Christie*, 825 F.3d 1048, 1061 (9th Cir. 2016) (proposed alternative must allow "the government [to] achieve its compelling interest to the same degree").  Plaintiffs' argument that they could perform the essential functions of their jobs remotely when the New York Fed was in a fully remote posture, *e.g.*, Am. Compl. ¶¶ 51, 96, does nothing to

27

dispute the New York Fed's showing that the essential functions of their jobs would require they be onsite and interact with others when the return-to-office commenced. *See, e.g.*, Dkt. No. 24-9 (Am. Compl. Ex. I) ("Certain of the essential functions of your job were excused during the pandemic. However, these functions are expected to resume . . . ."). Plaintiffs were expected to interact with colleagues and visitors in-person as individuals came to their workspace or while moving around the building, including when escorting guests. Dingman Ex. 3 at -977, -978, -980; Dingman Ex. 4; *accord Short v. Berger*, 593 F. Supp. 3d 944, 955–56 (C.D. Cal. 2022), *appeal dismissed*, No. 22-55339, 2022 WL 2421096 (9th Cir. May 17, 2022) ("[M]erely because the military has found ways to perform its duties despite the risks of COVID-19 does not mean it must endure these risks indefinitely when there are effective means of mitigating them."); *Knick v. Austin*, No. CV 22-1267, 2022 WL 2157066, at *5 (D.D.C. June 15, 2022) (rejecting argument that Plaintiff could "fulfill his responsibilities using the mitigation methods used throughout the pandemic" where "the overwhelmingly more effective measure of vaccination" is available).

In short, Plaintiffs' proposed alternatives were not less restrictive means for furthering the New York Fed's compelling interests. Under RFRA, the New York Fed was "not required to continue to 'muddle through' with less effective means once superior means of furthering its compelling interest, in the form of FDA-approved vaccines, were available." *Roth*, 603 F. Supp. 3d at 779.

## IV. PLAINTIFFS' FIRST AMENDMENT CLAIMS FAIL AS A MATTER OF LAW BECAUSE THE VACCINATION POLICY WAS NEUTRAL, GENERALLY APPLICABLE, AND HAD A RATIONAL BASIS

The Court should grant summary judgment on Plaintiffs' First Amendment claims for two independent reasons. *First*, Plaintiffs are not constitutionally entitled to exemptions from neutral and generally applicable rules like the Vaccination Policy. *We the Patriots USA, Inc. v.*

*Hochul*, 17 F.4th 266, 280 (2d Cir. 2021), *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022); *Kane v. De Blasio*, 19 F.4th 152, 175 (2d Cir. 2021).  *Second*, even if a claim were possible, the undisputed evidence shows the Vaccination Policy was enacted for a legitimate goal, using means rationally related to achieving that goal.  *Kane*, 19 F.4th at 166.

Plaintiffs seek relief under the First Amendment arising from the New York Fed's "refusal to grant [their] religious accommodations."  Am. Compl. ¶ 108.  But "the right of free exercise secured by the First Amendment does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability" and "does not require the accommodation of religious practice."  *Donlon v. City of Hornell*, No. 23-CV-6096, 2023 WL 2236490, at *4 (W.D.N.Y. Feb. 27, 2023) (internal citations and quotation marks omitted); *see also Shrum v. City of Coweta, Okla.*, 449 F.3d 1132, 1143 (10th Cir. 2006) (failure to accommodate employee does not violate Free Exercise Clause where need for accommodation arises from neutral and generally applicable employment requirement).

The Vaccination Policy is neutral and generally applicable.  Like other Covid-19 vaccination policies upheld by the Second Circuit, the New York Fed's policy requiring vaccinations "is facially neutral because it does not single out employees who decline vaccination on religious grounds" and "applies to all 'personnel.'"  *We The Patriots USA, Inc.*, 17 F.4th at 281; *see* Dkt. No. 24-2 (Am. Compl. Ex. B) at 1 ("This Policy applies to all Bank employees.").  Plaintiffs can point to "no evidence to suggest that the . . . purpose . . . was to suppress or discriminate against the exercise of religion."  *Does 1-2 v. Hochul*, No. 21-CV-5067, 2022 WL 4637843, at *9 (E.D.N.Y. Sept. 30, 2022).

The policy is also generally applicable.  Plaintiffs cannot make any "showing that the exemption procedures allow secularly motivated conduct to be favored over religiously

motivated conduct." *Collins v. City Univ. of New York*, 21 Civ. 9544, 2023 WL 1818547, at *9 (S.D.N.Y. Feb. 8, 2023). There is no evidence—or even allegations—that the New York Fed "favored secular . . . exemption requests over religious exemption requests." *Id.* As in other cases rejecting First Amendment challenges to vaccination requirements, the New York Fed has "not created a system of individualized exemptions and refused to extend it to religious hardships." *Ferrelli*, 2022 WL 673863, at *7. Because the New York Fed's requirement was neutral and generally applicable, Plaintiffs cannot maintain a First Amendment claim as a matter of law. *Kane*, 19 F.4th at 175; *Shrum*, 449 F.3d at 1143.

Even if a claim for failure to accommodate were possible, the neutral and generally applicable Vaccination Policy easily survives rational basis review. *See Kane*, 19 F.4th at 166 (rational basis review applies to neutral and generally applicable requirement). Plaintiffs concede that the New York Fed's Covid-19 Vaccination Policy satisfies a compelling interest. Dkt No. 28 (Ps' Mem.) at 9. The Second Circuit and other courts in this district have consistently held that vaccination requirements are rational means of preventing Covid-19 spread while ensuring public services continue. *E.g., Kane*, 19 F.4th at 166 ("Attempting to safely reopen schools amid a pandemic that has hit New York City particularly hard, the City decided, in accordance with CDC guidance, to require vaccination for all DOE staff as an emergency measure. This was a reasonable exercise of the State's power to act to protect the public health."); *Collins*, 2023 WL 1818547, at *9 ("standard is easily met here: COVID-19 has killed over one million Americans, and vaccination mandates are rationally related to curbing its spread and allowing students to continue learning in person safely").

## V.   PLAINTIFFS' TITLE VII CLAIMS FAIL FOR THE INDEPENDENT REASON THAT AN ACCOMMODATION WOULD HAVE CAUSED UNDUE HARDSHIP

To establish a prima facie case of religious discrimination under Title VII, Plaintiffs must prove that: (1) they have "a bona fide religious belief that conflicts with an employment requirement;" (2) they "informed the employer of this belief;" and (3) they were "disciplined for failure to comply with the conflicting employment requirement." *Bowles v. New York City Transit Auth.*, 285 F. App'x 812, 813 (2d Cir. 2008) (internal quotation marks omitted). Plaintiffs cannot establish a prima facie case for a Title VII violation because, as discussed above, undisputed evidence demonstrates that neither of them have bona fide religious beliefs that conflict with the Vaccination Policy. *See supra* at Argument Point II.

Even if Plaintiffs could establish a prima facie case, their Title VII claims fail because exempting them from the Vaccination Policy "would cause undue hardship," *Marte v. Montefiore Med. Ctr.*, No. 22-CV-03491-CM, 2022 WL 7059182, at *3 (S.D.N.Y. Oct. 12, 2022); *see* 42 U.S.C. § 2000e(j), by posing "an unacceptable health and safety threat to . . . co-workers, and visitors"—a "more than a de minimis cost." *D'Cunha v. Northwell Health Sys.*, No. 1:22-CV-0988 (MKV), 2023 WL 2266520, at *3 (S.D.N.Y. Feb. 28, 2023) (internal quotation marks omitted); *see id.* ("An accommodation is said to cause an undue hardship whenever it results in more than a de minimis cost to the employer."); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929, 2023 WL 3467143, at *6 n.7 (S.D.N.Y. May 15, 2023) (an increased health and safety risk posed to others from unvaccinated plaintiffs, and the resulting increased risk of civil liability, is an "obvious hardship"); *Kalsi v. New York City Transit Auth.*, 62 F. Supp. 2d 745, 758 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999) ("Where, as here, the proposed accommodation threatens to compromise safety in the workplace, the employer's burden of establishing an undue burden is light indeed.").

Nor could the New York Fed allow Plaintiffs to work remotely without incurring an undue hardship, given Plaintiffs' job responsibilities.  Dingman Decl. ¶¶ 17-18; Dingman Ex. 3 at -977, -980; Dingman Ex. 4.  "At a minimum, . . . Defendant would have to require another [employee] to cover [Plaintiffs' in-person] duties or hire a replacement . . . .  Either option would impose a cost on Defendant of the kind the Supreme Court has found to be more than *de minimis*."  *Shahid-Ikhlas* v. *New York & Presbyterian Hosp., Inc*., No. 22-cv-10643, 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023), *report and recommendation adopted*, 2023 WL 3626435 (S.D.N.Y. May 24, 2023) ("it is inescapable, in the Court's view, that . . . any accommodation that would entirely remove" plaintiff from work "would result in at least a *de minimis* burden on Defendant").

## VI.   PLAINTIFFS' CLAIMS FAIL UNDER THE DOCTRINES OF FRAUD ON THE COURT AND UNCLEAN HANDS

Summary judgment should be granted on Plaintiffs' claims for the additional, independent reason that their conduct in pursuing these claims constitutes a fraud on this Court and unclean hands.

"A fraud upon the court occurs where it is established by clear and convincing evidence 'that a party has set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by . . . unfairly hampering the presentation of the opposing party's claim or defense.'"  *Garcia v. Griffin*, No. 16-cv-2584, 2021 WL 1577679, at *1 (S.D.N.Y. Apr. 22, 2021) (quoting *New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc*., 432 F. App'x 25 (2d Cir. 2011) (summary order)).  "[W]hen a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process, it can fairly be said that he has forfeited his right to have his claim decided on the merits.  This is the essence of a fraud upon the court."  *McMunn v. Mem'l Sloan-*

32

*Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002).  Similarly, "[t]he doctrine of

unclean hands allows a court to deny relief in an action in which a party has been guilty of

unconscionable conduct in relation to the matter that he seeks."  *Goldstein v. Delgratia Min.*

*Corp.*, 176 F.R.D. 454, 458 (S.D.N.Y. 1997).

      The New York Fed has established by clear and convincing evidence that the entire

underpinnings of Plaintiffs' case are demonstrably false, bolstered by "fraudulent evidence."

*Shangold v. Walt Disney Co.*, 275 F. App'x 72, 73 (2d Cir. 2008).  Plaintiffs deliberately, and

admittedly, withheld numerous relevant documents during discovery to hamper the New York

Fed's ability to present its defense.  Plaintiffs' stonewalling "was the beginning of a sustained

effort by [Plaintiffs] to mislead Defendant[ ] and this Court."  *Lawrence v. City of New York*, No.

15-cv-8947, 2018 WL 3611963, at *6 (S.D.N.Y. July 27, 2018).  Their "attempts to explain"

their actions, including their testimony at deposition and the sanctions hearing "continue a

pattern of evasion and untruths."  *Id.*

      Gardner-Alfred testified falsely many times under oath on the core issues in this case:

before an Administrative Law Judge in an unemployment hearing on May 20, 2022; at her

deposition in this action on February 6, 2023; and before this Court on May 9, 2023.  Her false

statements and testimony have been brazen.  Gardner-Alfred testified before the Administrative

Law Judge that she does not take medication.  Ex. 22 at 44:14-15.  At deposition, she dug

deeper, testifying she "doesn't put foreign, mankind medicines into my body," Ex. 3 at 34:23-24;

does not "take med]ications in order to prevent" getting sick, *id*. at 42:15-23; could not recall the

last time she took medication because "[i]t's been so long," *id*. at 43:9-20; *see id*. at 50:25-51:13;

and would "maybe" take medication but only in a life-threatening situation, *id*. at 47:14-19.

Gardner-Alfred continued with further false testimony before this Court at the May 9, 2023 hearing and continues to maintain this frivolous lawsuit.

Diaz too has a "history of untruths," and provided false and "preposterous" testimony related to her conduct in discovery, leading the Court to conclude that she "cannot be trusted with respect to discovery" based on her "repeated misrepresentations." Sanctions Order at 30-31. Diaz brought suit based on demonstrably false religious premises, then hid the evidence that her objections were in fact secular by speciously claiming that her *hundreds* of relevant emails were "spam." *Id.* at 16; Ha Decl. ¶ 8; Ex. 7. She withheld relevant text and WhatsApp messages and testified falsely that she had never sent such messages. Sanctions Order at 30-31. And both Plaintiffs withheld evidence from their former counsel, causing his withdrawal. Ex. 3 at 165:11-16, 239:3-19; Ex. 6 at 327:9-328:25; Dkt. No. 51 (Oct. 25, 2022 Declaration of Andrew St. Laurent) at ¶ 17.

After hearing Plaintiffs testify, the Court held that it was "unable to conclude anything other than that both Plaintiffs . . . decided to intentionally withhold and/or destroy this information to avoid production." Sanctions Op. at 39. As part of Plaintiffs' scheme, Gardner-Alfred "withheld . . . and continues to withhold [relevant] documents because they are damaging to her claim." *Id.* at 27. These "unconscionable act[s]" are "directly related to the subject matter in litigation and ha[ve] injured" the New York Fed, which must devote substantial resources at public expense to defend against Plaintiffs' frivolous claims. *Zhang v. Zhang*, No. 19-683, 2022 WL 2057793, at *2 (2d Cir. June 8, 2022) (summary order) (internal citation and quotation marks omitted).

In light of Plaintiffs' severe and sustained misconduct, summary judgment should be granted on all Plaintiffs' claims. Plaintiffs should not be permitted to further waste the Court's

or the New York Fed's time and resources with a trial on Plaintiffs' willfully deceitful claims.

*See Skywark v. Isaacson*, No. 96 civ. 2815, 2000 WL 145465, at *2-3 (S.D.N.Y. Feb. 9, 2000)

(dismissing case where misconduct "went to the heart of the case, . . . was wil[l]ful and in bad

faith," because "[t]o fail to dismiss here would send a message to litigants that it is permissible to

lie, cheat and cover-up in order to further your claim").

## **CONCLUSION**

For the foregoing reasons, the Court should grant the New York Fed's motion for

summary judgment against all remaining claims in the Amended Complaint.

Dated:  June 15, 2023
    New York, New York

                  Respectfully submitted,

                  FEDERAL RESERVE BANK OF NEW YORK

                  By: */s/ Daphne Ha*
                  Daphne Ha
                  Alex Leonard
                  Michele Kalstein
                  Meghann Donahue
                  33 Liberty Street
                  New York, NY 10045
                  T: (212) 720-2140
                  F: (212) 720-8709
                  daphne.ha@ny.frb.org

                  *Counsel for Defendant*
                  *Federal Reserve Bank of New York*